# THE SUPREME COURT

OF

# PENNSYLVANIA.

EASTERN DISTRICT—MARCH TERM 1859.

PHILADELPHIA.

## Steam Boat Company *versus* McCutcheon & Collins.

A foreign corporation may lawfully take a lease of an office, in this State, in which to transact its business.

To contract for such a lease, is within the usual powers of the President of a corporation; and his declarations, at the time of making the contract, for whom the office was wanted, are admissible.

ERROR to the District Court of *Philadelphia*.

This was an action for use and occupation of an office, brought by McCutcheon & Collins against the Baltimore and Philadelphia Steam Boat Company, a corporation incorporated by the State of Maryland, to recover two quarters rent of an office, at the corner of Chesnut street and the wharf, on the Delaware, in the city of Philadelphia, alledged to have been leased to them. A witness was produced on the part of the plaintiff, who testified, that the office of the Baltimore & Susquehanna Steam Boat Company was on the wharf, a few doors above Chesnut street. A Groves, Jr., was the agent of the company at that time. W. L. Ashmead was the acting president at the time. That W. L. Ashmead rented the office at the corner of Chesnut street and the wharf, from

McCutcheon & Collins, at $250 per annum, for the purpose of having another office for the company, and of keeping an opposition company from getting it. W. L. Ashmead got the key first; we never had the key, until the year was up. I believe the year was from November 1844.

*Question by Plaintiff's Counsel.*—What were the declarations of Mr. Ashmead, at the time he rented the office corner of Chesnut street and the wharf, from the plaintiffs?

*Answer.*—He said he wanted to rent the office for the company. Two quarters rent were paid by Ashmead; one was paid in the presence of Groves. Whether Groves knew that Ashmead rented for the company, witness did not know.

It was alledged on the paper book of defendant below, that no actual occupation of the office was either alledged or proved below.

The case turned upon the question, as to the powers of the president of the company to contract; and whether his declarations were admissible in evidence.

The admission, by the District Court, of the question to the witness, and his answer, was the matter assigned for error.

The case was argued by *T. W. Biddle* for Plaintiff in error.— He contended that the admissions of a corporation are governed by the same rules that govern in respect to the admissions of declarations of agents. That to bind the principal, they must be within the scope of his authority, which must appear.. *Angel and Ames on corporations* 249; 2 *Phillips on Ev.* 168, *note* 174; 1 *Phillips on Ev.* 107. That the company were a Foreign corporation, who had a general agent here. That the corporation, being a Foreign corporation, without any authority given by our legislature, could not hold real estate, and a lease to them was void.

*N. B. Browne,* in reply, contended that the leasing of an office was within the scope of the power of the company, and important to its business; and if so, that when a corporation is acting within the scope of its institution, all parol contracts, made by its authorized agents, are express promises of the corporation, and all duties imposed on them by law, and all benefits conferred on them at their request, raise implied promises, for which an action lies. Bank of Columbia *vs.* Patterson's adm's. 7 *Cranch* 299, cited in 4 *Serg. & R.* 16; Turnpike Co. *vs.* Rutter. That it was not necessary to support an action for use and occupation, that there should be *a demise;* that it is enough that the defendant *used and occupied* the premises, by the permission of plaintiff, on the principle, that where a benefit has been derived, the law implies a promise to make compensation. Section 53, *Story on Agency.*— That the declarations of the president were introduced to show, *for whose use* the office was intended. 6 *Adolph & E.* 846.

[Steam Boat Company *v.* McCutcheon & Collins.]

The opinion of the Court was delivered April 8, by

COULTER J.—There is no evidence whether the plaintiff in error was a foreign or domestic corporation; and it is of little consequence whether it is one or the other. No corporation can hold real estate beyond the authority conferred in its charter, and the extent of that authority, in this case, is not in evidence. But every corporation may contract; and having purchased and paid for real estate, the vendor cannot take it back, at his pleasure, nor make the contract null and void, as to him. The State, by virtue of its transcendental power, may escheat it. But this principle does not extend to a lease, or to a contract, express or implied, for the purpose of enabling a corporation to carry on its business.— A foreigner may, undoubtedly, lease a house to shelter himself and family, although he cannot hold real estate; and having contracted for it, and used it, must pay the rent. Some things lie too deep, in the common sense and common honesty of mankind, to require either argument or authority to support them; and this, I think, is one of them. The president of the company, leased this property, from the plaintiffs below, received the key, and retained possession for the term, and the president paid part of the rent. It is of no consequence whether the company used it seldom, or frequently, or not at all. They kept the plaintiff out of possession, and kept themselves in the legal possession. The exigencies of their business may not have been so great as they contemplated and expected, and they may have found one office sufficient. The only real question in the case is whether the contract made by the president, was within the scope of his authority; and whether his statements, at the time he made the contract, were proper evidence of the purpose, for which he rented the office.— The office was close in the vicinity of the wharf, where the company landed and received their passengers. I should suppose that it admitted of no doubt, whatever, that an office, there, was not only a great convenience to the business of the company, but indispensable. Railroad and stage companies have their offices, and could not get along without them; and so it must be, with steamboat and transporting companies. Who, then, was the proper person to make the contract? Certainly, the president. We must bear in mind that those kind of artificial men, or persons, are becoming very common in this State. The legislature turn them out, almost as rapidly as a miller does his grist. They compose a new element, or ingredient, of modern society. They contract with every body, and about all manner of things; and they can contract by their chief officers; and such is their usual course of business. The president of a company presents himself to make a contract, evidently connected with the business. He declares the object and purpose of the contract. Who doubts him?· We are a dealing people. Is he asked to produce the charter and the

books of the company, to shew that he is authorized to make the contract *secundum artem?* Such is not the custom. Society must be protected from mischief, arising from the multiplication of these bodies. As they can only contract by their officers, the declarations of those officers, when engaged in the business of the company, like the declarations of an agent within the scope of his authority, or the declarations of an individual engaged in his own business, are evidence against their principals. This contract, whether it is considered express or implied, (and there is evidence to justify its being considered in either aspect), was within the scope of the authority of the president of the company; and his declarations, made at the time, were competent evidence of the purpose, for which the contract was made.

Judgment affirmed.