# Mesick v. United Collieries Company.

*Affidavit of defense—Corporation—Power of president.*

Where the question raised by an affidavit of defense is simply the authority of the president of defendant corporation to increase the plaintiff's salary without authority of the board of directors and without any notice to them, the case is for the jury when the above question is distinctly raised.

Argued Oct. 9, 1900. Appeal, No. 72, Oct. T., 1900, by defendant, in suit of Edward K. Mesick against the United Collieries Company, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1899, No. 158, in favor of plaintiff, for want of a sufficient affidavit of defense. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed. Opinion by BEAVER, J. RICE, P. J., and W. W. PORTER, J., dissent.

Rule for judgment for want of a sufficient affidavit of defense. Before the court in banc.

It appears from the record that the action was assumpsit by which the plaintiff sought to recover the sum of $1,200, together with interest thereon, for salary for the term of one year from April 1, 1899, at a monthly salary of $150, there being credits thereon of $650.

Plaintiff filed the following affidavit of defense and supplemental affidavit of defense :

1. The board of directors have not ratified the appointment of the plaintiff as the agent of the defendant, and the agreement of Henry Levis to pay the plaintiff the sum of $150 for each month for one year from the first day of April now last past.

2. Deponent is advised and knows that the defendant has been advised by counsel that Henry Levis, as president of the defendant, had no power to make an appointment of the plaintiff and bind the defendant to pay a salary for the period of one year ; that there is no by-law of the company or authority from the board of directors giving the president of the defendant any such power ; and that it is unnecessary to add to this affidavit copies of the by-laws and minutes of the company to prove a negative.    Deponent as secretary, and familiar with the affairs of the company, knows of no such authority.

3. Before this suit was begun, the defendant was willing to allow the plaintiff for any services he may have rendered under the appointment averred in his statement or otherwise, but without ratifying that appointment, the sum of $100 a month from the 1st day of April to the 1st day of October now last past ; which amounts to $600, and would leave the plaintiff indebted to the defendant in the sum of $50.00.    But since the commencement of this action, the defendant has learned that the plaintiff did not act faithfully and has caused the following losses to the defendant which should also be set off against the demands of the plaintiff ; that is to say :

4. The defendant is informed, believes and expects to be able to prove that the plaintiff, in the month of November now last past, allowed one Frank W. Williams, a relative of the plaintiff by marriage, to make a claim on the plaintiff as the agent of the defendant, for demurrage alleged to be due for the detention of the canal boat Owen McCaffrey, during the months of June and July now last past.    The plaintiff not paying such claim, said Williams caused certain office furniture belonging to the

defendant in the city of New York to be seized by process issued out of the United States district court for the southern district of New York. This furniture will cost to replace the sum of at least $307.28. The defendant, on demand upon the said Williams and the plaintiff respectively, has been able to learn nothing further than is here set forth, and no defense being thereby disclosed, the said furniture is about being sold under the said seizure and the proceeds of the sale applied to the costs of the proceeding and the aforesaid alleged claim of Williams.

5. The defendant is informed, believes and expects to be able to prove that after the seizure of the office furniture as above mentioned, the plaintiff communicated the fact of the seizure to Möller & Company, then indebted to the defendant in the sum of $524.28 on a promissory note ; this fact was communicated by the plaintiff to Möller & Company to show the insolvency of the defendant, when in fact, this defendant was not and is not insolvent. Whereupon Möller & Company allowed their note to go to protest on the 7th day of December now last past, and now claim a set-off because the supposed insolvency of the defendant had caused Möller & Company to buy coal elsewhere at a loss of $390 or thereabouts, being the additional price paid by Möller & Company above that alleged by them to have been fixed with the plaintiff as the agent of the defendant for coal to be supplied heretofore, as well as further sums from future breaches of the supposed contract. Defendant was not informed by plaintiff of such contract and that there would be any such liability in delivering coal.

6. The defendants therefore claim to recover from the plaintiff the said sums of $50.00, $307.28 and $390, in the aggregate, the sum of $747.28.

#### SUPPLEMENTARY AFFIDAVIT OF DEFENSE.

1. The deponent has been informed, since the making of the above mentioned affidavit of defense, by Mr. Steen, the secretary and treasurer of the defendant from April 1, 1899, to July 28, 1899, and who is no longer in the employ of the company, that the president, Henry Levis, never notified him or the board of directors that he had employed the plaintiff for the period of one year, at the monthly salary of $150; the plaintiff was employed before April, 1899, at the sum of $100 a

month.   Deponent believes these statements and expects to be
able to prove them on trial of this cause.

2. That it is not true, as set forth in the statement of the
plaintiff's claim, that the management of the company changed
on August 4, 1899, when Henry Levis, president of the com-
pany, who was supposed to have made the yearly contract with
the plaintiff, died.   That the change did occur to the deponent's
knowledge at the time of the annual election, on June 28, 1899,
when the president was elected to take charge.

3. That the deponent succeeded Mr. Steen as secretary on
July 28, 1899 ; that he was informed by the president on Sep-
tember 20, 1899, that the president had discharged the plain-
tiff under the authority of the by-laws of the company, which
provide amongst other things that the president shall have
power to remove any officer, the authority being contained in
article 2, section 5, and being in the following words : " He
shall have power to remove any officer or employee and sub-
stitute another in his place, and shall fill all vacancies as well
in office of directors as in office of secretary and treasurer."
Of this discharge, the plaintiff was notified, and the letter writ-
ten on that day as set forth in statement of plaintiff's claim,
shows that the plaintiff was addressed merely as an individual,
and not as an agent of the defendant company.

4. The defendant company is willing to pay the plaintiff for
his services to the day of his discharge at the rate of $100 a
month, which sum amounts to $600, without deducting the few
days in the latter part of September after his discharge.   The
defendant admits that the plaintiff is entitled to this sum of
money, but claims that the plaintiff is in its debt in the sum of
$50.00, as the payments on account have amounted to $650.
The overpayment occurred through the irregularity of the pay-
ment on account and the expectation of an agreement with the
plaintiff to continue in the defendant's employ at the rate of
$100 a month, subject to discharge by the president, as provided
in the by-laws.

5. That payments on account of plaintiff's salary were made
generally on account, as shown by the plaintiff's statement of
claim, and not in payment of any particular month's salary, and
the payments of $150 on three different occasions prior to the
change in the management of the company were not made in

recognition of the plaintiff's claim for a salary at the rate of $150 a month.

6. The by-laws provide in article 2, section 1, as follows: "The business and property of the company shall be managed (except as herein provided) by six directors, who shall be stockholders and shall be elected," etc.

That under this provision of the by-laws the matter of contract with the plaintiff has not come before the board at any time since the deponent's election as secretary, and deponent is informed by Mr. Steen, the former secretary, that no mention or report of any such arrangement with the plaintiff was made to the board of directors between April 1 and July 28, 1899. Deponent believes and expects to be able to prove this statement on the trial of the cause.

7. Deponent is informed, believes and expects to be able to prove that the directors did not know of this contract, either individually or as a board, and have not acted or refrained from acting upon this contract.

8. That the set-off mentioned in the fifth paragraph of the affidavit of defense cannot be made more specific as this deponent is informed, believes and expects to be able to prove that a suit to test the claim of Möller & Company to the damages mentioned in the affidavit is pending on behalf of the defendant corporation in this suit and is still undetermined.

9. That the claim in the fourth paragraph of the affidavit of defense of a set-off of the value of the office furniture therein mentioned, cannot be made more specific because the proceedings in admiralty therein mentioned are still pending and undetermined.

The court below made absolute the rule for judgment for want of a sufficient affidavit of defense and damages were assessed at $562.69. Defendant appealed.

*Error assigned* was in entering judgment for plaintiff, thereby affirming the validity of the alleged contract of employment.

*John B. Uhle*, for appellant.—Corporations formed under general laws have merely skeleton charters, and most of their powers and liabilities must be found in the by-laws adopted within the limits prescribed by the general corporation law of

the state.   So held, with regard to corporations formed under the Act of April 29, 1874, P. L. 73, in Millward-Cliff Cracker Company's Estate, 161 Pa. 157.

There, the board had the general control of the management of the company's business and the president could not do what was to be done by a committee of the board of directors.   Here, the by-laws are even more express in providing, as stated in the supplemental affidavit of defense, first, as to the board of directors:

"The business and property of the company shall be managed (except as herein provided) by six directors, who shall be stockholders . . . ." (By-laws of Appellant, article 2, section 1.)

And second, in the course of the article on the president's powers and duties, the following occurs:

"He shall have power to remove any officer or employee and substitute another in his place . . . ." (By-laws of Appellant, article 2, section 5.)

Consequently, there was no power in Levis, as president, to make a year's contract with the plaintiff, and thus fasten on the company by the imprudence of one person, an employee whose services might not be desired.

*Henry N. Smaltz*, with him *Charles C. Lister*, for appellee.— It is now well settled that where the president of a corporation, without previous authority, makes a contract or employs a person on its behalf, and it receives the benefit of the contract or the services of the person employed, it must pay.   Citations of authority are unnecessary, it is submitted, to sustain this principle.

The remedy of the person injured has been concisely and clearly pointed out in the very latest case upon the subject: Allen v. Colliery Engineers' Company, 196 Pa. 512.

There is no merit in the items of set-off.

- Excerpts from by-laws have been referred to, but they, as well as the authority cited by the plaintiff, are not material in view of the principle of law above referred to.   The by-laws should be set out in full.   If the president has the power to remove and substitute, as stated, the latter includes the power to appoint, and the complete by-laws would show all the powers

with which the president is clothed, and the restrictions upon him.

The cases cited by the appellant all relate to unexecuted contracts, and the corporations did not receive the benefit of them. It is submitted that under the affidavits plaintiff was entitled to recover and the judgment of the court below should be affirmed.

OPINION BY BEAVER, J., November 19, 1900:

The plaintiff alleges in his statement "that on or about the first day of April, 1899, the said plaintiff was employed by the said defendant, through its president, Henry Levis, as agent of the said company defendant, in the city of New York, for the term of one year from the first day of April, 1899, at a monthly salary of $150." If there were no denial of this alleged contract, the fact that the plaintiff entered upon the discharge of his duties thereunder would of itself have been such notice as to put the defendant company upon inquiry as to the terms under which the plaintiff was employed. There is a distinct allegation in the affidavit of defense, however, that this was not an original employment; that the defendant was originally employed at a salary of $100 per month. His continuing to discharge the duties of his original employment, therefore, would be no notice whatever to the defendant company of any increase of salary. The power of the president to make such an increase is specifically denied. This raises a question of fact sufficiently specific to warrant its submission to a jury. If the salary originally paid is all that the defendant is bound to pay, the plaintiff has been more than paid according to the admissions in his statement. There was nothing in the retention by the plaintiff of moneys on account of salary which would necessarily put the defendant upon inquiry until the time at which it is alleged the discharge took place.

The question raised by the affidavit, therefore, is simply the authority of the president to increase the plaintiff's salary, without authority of the board of directors and without any notice to them. This is distinctly raised and is sufficient to carry the case to a jury.

It is not necessary to consider the allegations of set-off contained in other paragraphs of the affidavit.

316, (1900).]                    Dissenting Opinion.

Judgment reversed and a procedendo awarded.

WILLIAM W. PORTER, J., dissenting:

I agree with the majority of the court that the question raised
by the affidavits of defense is one of authority in the president
of the defendant company to make the contract upon which
the plaintiff sues, but differ from the conclusion reached.  I
hold that the question is not one which, on the affidavits, should
be sent to a jury for trial.  Two affidavits have been filed.  It
may fairly be assumed that every fact beneficial to the defend-
ant's case has been set forth in them.  The allegation is that
no contract of employment with the plaintiff for a year at $150
per month, was reported to, or approved by, the board of direct-
ors of the company, and that the plaintiff had, before the date
of the alleged contract, been employed by the company by the
month at $100.

It is in effect contended, not that the contract was not made,
but that the approval of the board was not given to the making
of the contract for the year.  I am of opinion that it is fairly
within the apparent scope of the authority of the president of
a company engaged in the business of mining and shipping coal,
to change the employment of a selling agent from a monthly
to a yearly employment and to increase his compensation.  To
subject an employee to the necessity of showing a by-law or
resolution of the board of directors, giving authority to the
president to make the contract, is imposing an undue burden.
The employment of agents necessary to the conduct of the
legitimate business of the corporation is within the implied
power of the executive head of such a corporation.  See Wright's
Appeal, 99 Pa. 425.  In holding that the president of a com-
pany had power to lease an office, the Supreme Court in 1850,
in Steamboat Co. v. McCutcheon, 13 Pa. 13, said : " Who then
was the proper person to make the contract ?  Certainly the
president. . . . The president of a company presents himself
to make a contract, evidently connected with the business.  He
declares the object and purpose of the contract.  Who doubts
him?  We are a dealing people.  Is he asked to produce the
charter and the books of the company to show that he is au-
thorized to make the contract secundum artem ?  Such is not
the custom. . . . This contract whether it is considered, ex-

pressed or implied . . . . was within the scope of the authority of the president of the company." Again, in Turnpike Co. v. Pass. Ry. Co., 194 Pa. 144, Mr. Justice BROWN, in holding valid a corporate contract, sealed with the corporate seal and signed by the president in the absence of authority from the board of directors, approves the following doctrine announced by the Supreme Court of the United States : " Where a party deals with a corporation in good faith—the transaction is not ultra vires—and he is unaware of any defect of authority or other irregularity on the part of those acting for the corporation, and there is nothing to excite suspicion of such defect or irregularity, the corporation is bound by the contract, although such defect or irregularity in fact exists. If the contract can be valid under any circumstances, an innocent party in such a case has a right to presume their existence, and the corporation is estopped to deny them : Merchant's Bank v. State Bank, 77 U. S. 604, 644."

Further than this, the affidavits are defective in this, that they fail to set up all of the by-laws applicable to the subject-matter. Two quotations are made from the by-laws. One is as follows : " The business and property of the company shall be managed (except as herein provided) by six directors who shall be elected," etc. No explanation of the exception in parenthesis is vouchsafed and the quotation of the section of the by-law itself is left incomplete. We may well assume from this excerpt that elsewhere in the by-laws the management of the company was entrusted, at least in respect to usual and ordinary matters of business, to the executive officer. The other quotation from the by-laws refers to the president and provides, " He shall have power to remove any officer or employee and substitute another in his place, and shall fill all vacancies, as well in the office of directors as in the office of secretary and treasurer." It is not overstraining this by-law to hold that the president had authority to make the contract set up by the plaintiff. He had power to remove the plaintiff from his previous monthly employment and to substitute another employee. There are no expressed restrictions of the terms of such substitution. In making it, the terms, whether of increase of salary or other change if made for the benefit of the company in the honest judgment of the president, would doubtless be within

the scope of his authority. If then, the president might sub-
stitute a different person on different terms, I can see no ob-
jection to his retention of an old employee by changing the
terms of his employment from a monthly to a yearly engage-
ment, and even upon advanced compensation, in the absence
of any proof of wrongdoing or collusion.

Finally, I am confirmed in the view herein expressed, by the
fact that for a considerable time the company received the ser-
vices of the agent under the new employment and paid for them
at the rate of $150 per month. I would affirm the judgment.

RICE, P. J., concurring:

I concur with Judge PORTER in the conclusion, and for the
reasons stated by him, that it does not clearly appear in the
affidavit of defense that the president had not the authority to
make the contract in question; but even if that fact were al-
leged with sufficient certainty I would still affirm the judgment
of the court below.

1. It is alleged and not denied that the plaintiff was em-
ployed by the president of the defendant company for one year,
beginning April 1, 1899, at a salary of $150 per month.

2. It is alleged in the statement that he continued in the em-
ployment of the company until the time of bringing suit (De-
cember, 1899), and rendered the services for which he was
employed. In the first affidavit there was no denial of this
allegation, nor is there any plain and unequivocal denial of it
in the second affidavit. The allegation by the secretary that
he was told by the president on September 20, 1899, that he
had discharged the plaintiff is not such an averment of the
discharge of the plaintiff as the defendant might have made
and ought to have made, if the fact be as its counsel now con-
tends. The further allegation that the plaintiff was notified
of the discharge is silent as to the time and manner when and
in which this notice was given.

3. On three different occasions, viz: on May 9, June 14,
and July 5, 1899, the plaintiff was paid $150. This was the
exact amount of his salary under the alleged contract for the
month preceding each payment. If the payments were made
through mistake of fact, or if the increase of the monthly sum
was intended as a payment in advance, it would have been

easy to say so. The vague and unsatisfactory explanation of these significant acts vouchsafed in the affidavit of defense does not, in my opinion, destroy their effect as a recognition of the fact that his monthly salary had been increased. We have then a case where it clearly appears that the contract of employment was made, where it is alleged and not satisfactorily denied that the services contemplated by the contract were rendered, where it appears that the plaintiff was paid for a portion of the time at the rate stipulated for by the contract, and where no fraud or collusion is alleged. Nor is it alleged that the salary stipulated for was an unreasonable or exorbitant one for the services contemplated by the contract. It seems to me, therefore, that the case comes within the well-settled principle that where a corporation receives the benefits of a contract of this kind made by its president, it is estopped to deny his authority as a defense to an action for the services actually rendered. If the contract were wholly executory, and the plaintiff was suing for a breach of it, a different question would be presented.