# Commonwealth *v.* Earl, Hockman and Mattison, Appellants. (No. 1.)

*Criminal law—Robbery—Evidence—Sufficiency—Informer—Trap to catch defendants—Public policy.*

In an indictment for robbery the Commonwealth produced witnesses who testified that the defendants with others conspired to rob a bank. The plan was complete, but for various reasons the robbery was deferred. In the interval of delay one of the number turned informer, and later, together with a state policeman, encour-

aged and assisted the defendants in executing the plan. In such case the evidence was sufficient to sustain a verdict of guilty and judgment for the plaintiff will be sustained.

A person who has entered into negotiations with conspirators, but has withdrawn before the commission of an overt act, or who had the original purpose of frustrating the enterprise and later of disclosing the conspiracy to public officers, under whose direction he continues to act with the confederates until the affair can be brought to such an issue as to secure a conviction of the guilty, is not an accomplice, nor is his conduct in violation of public policy.

Where one joins a criminal organization for the purpose of exposing it and bringing criminals to punishment, and honestly carries out that design, he is not an accessory before the fact although he may have encouraged and counseled parties who were about to commit crime, if in so doing he intended that they should be discovered and punished. His testimony, therefore, is not to be treated as that of an infamous witness.

In such a prosecution it was not error for the court to charge that the action taken by the police officers was in the scope of their duty, it appearing that part of the defense consisted of disparagement of detectives and police officers.

Argued April 11, 1927. Appeal No. 191, April T., 1927, by defendant from sentence of O. & T. Clarion County, February Sessions, 1927, No. 1, in the case of Commonwealth of Pennsylvania v. Samuel C. Earl, Frank K. Hockman and William J. Mattison. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Affirmed.

Indictment for robbery. Before HARVEY, J.

The facts are stated in opinion of the Superior Court.

Verdict of guilty on which judgment of sentence was passed. Defendant appealed.

*Errors assigned,* among others, were the charge and judgment of the court.

*John S. Powers,* and with him *George F. Whitmer,* for appellant.

*H. M. Rimer,* and with him *A. A. Geary* and *John M. Myers,* District Attorney, for appellee.

OPINION BY HENDERSON, J., July 8, 1927:

The defendant was convicted of robbery; the evidence for the prosecution being in substance that the defendant took from the cashier of the Clarion County National Bank of Knox the sum of $8,000 by violence and putting in fear. No evidence was offered in defense of the charge, reliance being placed on the insufficiency of the case presented by the Commonwealth to sustain a conviction. A brief statement of the important facts developed by the evidence will make clear the position contended for by the defendant. It was disclosed by the evidence that early in March, 1926, the defendant then living in New Castle in this State was in conference with five or more other persons with reference to the robbery of the bank. Two of these, Frank K. Hockman and William J. Mattison, were tried with the appellant, the former being convicted and the latter acquitted by the jury. According to all of the witnesses, Hockman originated and promoted the plan to commit the robbery; he had lived in Knox and was familiar with the situation of the bank building. He knew who the officers of the bank were, where they lived, and the manner in which the bank was conducted. He was also acquainted with the location of the highway from New Castle to Knox. On several occasions prior to the occurrence out of which the prosecution arose, he had conferences with one or more of the five persons referred to, one of whom was George F. Gui. As a result of these conferences, it was arranged that the defendant, Gui, Mattison, and another man to be brought from Ohio, were to go from New Castle on Friday night, March 5, and on the following morning rob the bank. Two of the persons originally included in the enterprise had engagements which prevented them from going at the time agreed on, and the man supposed to be coming from Ohio had not arrived. The execution of the plan was therefore

postponed until Sunday night, March 6.  Two or three days before that date, Gui concluded not to take part in the project and without disclosing to his associates his change of mind, he told the chief of police of New Castle and two members of the State constabulary about the plan to rob the bank.  Gui proposed that one of the constabulary go with him in citizen's clothes to Hockman's.  This was agreed to and that evening Gui and the State policeman visited Hockman at his home; the policeman being introduced to Hockman as Smith, the man expected from Ohio.  The appellant was present at that meeting.  A map was then produced on which Hockman pointed out the location of Knox and the road to be taken in getting there.  Hockman was not to go with the party because he was well known in that locality and would be easily recognized.  When the time for starting arrived Mattison refused to go and two of those first spoken to had engagements which prevented them from going on Sunday.  It was finally arranged that Earl, Gui, and the State policeman, who was introduced to the party as Smith, should make the trip.  An automobile was used which was under the control of the State policeman and a revolver was provided from some source.  Shortly before the time set for committing the robbery, the cashier of the bank had received notice of the scheme and several members of the State constabulary had been sent to Knox to apprehend the persons engaged in the enterprise. About eight o'clock on Monday morning, the appellant, Gui, and Smith, went to the home of Mr. Berlin, the cashier of the bank, and by the use of threats on the part of the appellant induced him to go to the bank to obtain money.  The appellant and Gui accompanied him, the former having a loaded revolver which he exhibited and which, as stated by the cashier, put him in fear.  Earl demanded $8,000 which the cashier obtained from the funds of the bank and delivered to

him. The three men returned to the cashier's home together with Miller, the assistant cashier of the bank,. who was in the building when the party arrived with the cashier. On the return of the men to the cashier's home, they were confronted by a number of members of the constabulary. The defendant was arrested and the money which he had received at the bank was taken from him. The prosecution of the persons implicated was then instituted. It is contended by the learned counsel for the appellant that the court erred in not directing a verdict of not guilty on the ground that he was decoyed and persuaded to take part in the plan to rob by members of the State police, and that a conviction could not be sustained on the testimony of Gui because he was an accomplice. Exception is also taken to remarks of the court in his charge to the jury with respect to the members of the State constabulary as an organization and to the admission of the evidence of conversations between the officer of the State constabulary in charge of the men at Knox and the district attorney of Clarion County in the absence of the appellant. We have examined the record to ascertain what there is in the testimony tending to show any participation by members of the State constabulary in organizing the plan attempted to be carried out, but we have not found any evidence giving support to the claim that the appellant was induced to take the part he did by any enticement or persuasion on the part of the officer of the Commonwealth. The evidence is all to the effect that the whole scheme was planned and its details plotted before Gui made the disclosure to the police officers. If the evidence of the Commonwealth was credible a conspiracy was formed in the development of which the appellant was an active party. The details of the undertaking were gone over at Hockman's house and the contingencies discussed in the consultation there had. Is the defend-

452    COM. *v.* EARL et al., Appellants.   (No. 1.)

Opinion of the Court.   [91 Pa. Superior Ct.

ant relieved from criminal responsibility because one of the conspirators retired from the carrying out of the plan and informed the police officers of the proposed raid on the bank? If the question were novel, the answer should be no. The defendant is responsible for his own conduct and he is not excused by the fact that he was not informed that the conspiracy had been "given away" by one of the original confederates. Gui was not an accomplice. He withdrew from the undertaking before it was carried into effect, and whatever opinion might be entertained as to the character of his conduct, it was not contrary to the law of the Commonwealth. In his capacity as a volunteer detective, he was following the method pursued by police officers in a multitude of cases. A person who has entered into negotiation with conspirators but has withdrawn before the commission of an overt act, or who had the original purpose of frustrating the enterprise and later of disclosing the conspiracy to public officers under whose direction he continues to act with the confederates until the affair can be brought to such an issue as to secure the conviction of the guilty, is not an accomplice, nor is his conduct in violation of public policy, and this applies as well to the conduct of the State policeman whose duty it was to frustrate the accomplishment of the scheme disclosed by Hockman and the others engaged in the original combination. We find nothing in the evidence to impeach the motives of Gui and the police officers, and the verdict of the jury sustains the credibility of their evidence. The case of Campbell v. Commonwealth, 84 Pa. 187, shows that where one joins a criminal organization for the purpose of exposing it and bringing criminals to punishment and honestly carries out that design, he is not an accessory before the fact although he may have encouraged and counseled parties who were about to commit crime, if in so doing he intended that they

should be discovered and punished and his testimony therefore is not to be treated as that of an infamous witness. To the same effect is Commonwealth v. Hollister, 157 Pa. 13. An extended discussion of the subject will be found in the opinion of the late President Judge RICE in Commonwealth v. Wasson, 42 Pa. Superior Ct. 38, which contains numerous citations of authorities in other jurisdictions. The weight of authority on the subject is thus stated in 3 Wigmore's Ev., Sec. 2060: "When the witness has made himself an agent for the prosecution by associating with the wrong doers or before the actual perpetration of the offense, he is not an accomplice." Of like import is I Greenleaf on Ev., Sec. 382. Whether a witness is an accomplice is to be determined by the answer to the question whether he could have been convicted either as a principal or accessory with respect to which inquiry it was said in Hazen v. Commonwealth, 23 Pa. 355, that if the object was merely to detect and bring to punishment suspected violators of the law, there was nothing indictable in the transaction. All of our cases hold that there must have been a criminal intent on the part of the witness in his relation with others engaged in the combination to commit a crime. The use of decoy letters is a common method employed by persons engaged in the apprehension of criminals especially in what are known as "black hand" cases and conspiracies for the manufacture and distribution of counterfeit money. Such a practice does not involve the detective in an unlawful transaction or relieve the accused from liability to prosecution because he was thus led into a trap: Grimm v. U. S., 156 U. S. 604; Andrews v. U. S., 162 U. S. 420; People v. Noelke, 94 N. Y. 137. Even if there had been shown to be a suggestion or solicitation to commit a crime, that would not be a defense if the accused voluntarily and knowingly entered into the project: People v. Krivitski, 168

454     COM. *v.* EARL et al., Appellants.     (No. 1.)

Opinion of the Court.     [91 Pa. Superior Ct.

N. Y. 182; People v. Conrad, 102 Appellate Division (N. Y.) 562. According to the evidence before us, the appellant introduced the subject of the robbery of the bank to Gui and all of the evidence implicates him as a principal actor in the transaction, although Hockman seems to have been the directing mind in determining the place and manner in which their enterprise should be carried out. Unless we are to hold therefore that the fact that one originally in the conspiracy had undergone a change of mind and concluded to expose the scheme, and for the more effectually accomplishing this object, remained in apparent accord with his associates, absolves his associates from what would otherwise be the commission of a felony no defense in law or fact is offered in relief of the appellant. It may be true as argued by the learned counsel that deceit and suppression of the truth appear in the conduct of the witness Gui, but that cannot be pleaded in relief of one actually engaged as an accessory or principal in the perpetration of the felony.

Complaint is made against that part of the charge of the court embraced in the eighth assignment of error, from which it appears that a part of the defense consisted in disparagement of detectives generally and the State constabulary specially. Prompted by that line of discussion, the court thought it proper to bring to the attention of the jury, the duties of these officers and to instruct them in that connection with respect to the methods frequently adopted for the purpose of detecting and punishing those guilty of crimes, in the course of which instruction he stated that the action of the officers taken in the case under consideration was within the scope of their duty. This we think was clearly within the right of the court and in conformity with the cases above cited and many others to which reference might be made. The remark of the court that the State police are a body of active, vigorous, efficient

men, was not an extravagant statement, and even if it were overdrawn, it did the defendant no harm for the general conduct and character of that organization was not involved in this case. The two members of that body at New Castle were the only persons with respect to whom it could be said that they were in collusion with the defendant in any way and all the evidence on the subject is to the effect that their only motive in cooperating with accused was more surely and effectively to prevent the accomplishment of the crime contemplated.

Exception was taken to the offer of proof set forth in the tenth assignment relating to a conversation between the district attorney of Clarion County and Captain Mauk of the State constabulary, in the course of which, the latter informed the district attorney on Saturday preceding the appearance of the defendant in Clarion that an attempt would probably be made to rob the bank on Monday morning; that his information was there would be six persons in the party, one of whom was a member of his company, and another a member of a "gang" in New Castle who had given the officers information. The district attorney was also informed that there would be a sufficient number of members of the State constabulary in the town that morning to protect lives and property and asked the concurrence of the district attorney in the plan outlined by the officer for the arrest of the offenders. The offer was made to show the connection of the State constabulary and Gui with the case. Whether competent or not we do not regard the evidence as prejudicial to the defendant. It was not material in the case for it was not important that the advice of the district attorney be had with respect to the anticipated raid on the bank. No names of participants in the scheme of robbery appear to have been mentioned, and the weight of evidence against the appellant was not

thereby increased.   He was on the ground at the time the money was taken; he assisted in the seizure of the cashier and accompanied him to the bank and there obtained the money.   This is shown by several witnesses and not contradicted by anybody.   The defendant was either guilty if the jury credited the testimony, or he was excused from responsibility because Gui and the State policeman at New Castle exposed the project in time to prevent the carrying out of the plan which the defendant and his confederates had organized and attempted to execute.   The only defense attempted to be introduced is one of law which we have shown to be unsubstantial.   The judgment of the court below is sustainable therefore under the evidence and the legal principles applicable thereon.

The judgment is affirmed and the record remitted to the court below to the end that it be carried into effect.