Commonwealth *v.* Hamilton, Appellant.

Argued October 17, 1941.

Before KELLER, P. J., CUNNINGHAM, BALD-RIGE, STADTFELD, RHODES and HIRT, JJ.

*I. M. Czap,* with him *I. Bernard Fenner, Edwin P. McManus* and *John E. Sheridan,* for appellant.

*Emanuel W. Beloff*, Assistant District Attorney, with him *Charles F. Kelley*, District Attorney, for appellee.

OPINION BY HIRT, J., February 28, 1942:

The defendant William Hamilton was the president of a social club duly licensed to sell alcoholic beverages to its members. He with the other defendants, employees of the club, were charged in three indictments with the illegal sale of liquor to non-members of the club. The bills were consolidated and were tried together. At the close of the Commonwealth's case a demurrer to the evidence was sustained as to all defendants except defendant Hamilton, on bill 240, and as to all defendants except James O'Neill on bill No. 241, and as to all defendants on bill No. 242. The jury acquitted O'Neill, but found defendant Hamilton guilty, with a recommendation of mercy. A new trial was refused and appellant was sentenced to pay a fine, only, of $100 and costs. Since the assignments of error relate to alleged prejudicial remarks of the trial judge during the course of the trial and in the charge of the court, it will be necessary to refer to the testimony.

Jenkins, a police officer of the City of Philadelphia went to the club on September 14, 1940 and applied to the doorman for membership. Without any formality or inquiry as to his name, he was handed an application blank which he signed, and on payment of twenty-five cents, of the $1 annual dues, he was immediately admitted to the club and bought drinks. Without his knowledge he was later vouched for by a member of the club whom he did not know, and four days after his application he received a membership card with the notation on the back, "Expires April 1, 1940," a date prior to the time when he applied for membership. On October 27, 1940, Jenkins with officer Curtis, as his non-member guest, both in plain clothes, visited the club and their testimony is that they went to the bar; that Curtis ordered two drinks of liquor from defendant

Hamilton, who was then acting as bartender, and was served by him; that Curtis paid defendant for these drinks as well as for the beer ordered by Jenkins.

In this connection, the court, in a colloquy with counsel, said: "He [Jenkins] said he had a glass of beer and the other man had two whiskies. But the point about it is, Mr. Sheridan, he did not buy it. *It was this Curtis, this other man, who paid for it.* Of course that may raise an issue of fact. I do not know. But as long as he [Jenkins] did not do the buying, then nothing can be predicated in the way of a conviction on his testimony." We cannot agree that the italicized sentence, in its context was in any degree prejudicial. It was said early in the examination of Jenkins, the first witness called, and the jury must have understood it as a reference to the proofs at that stage of the trial as indicated by sentences following, and not as a conclusion of fact, regardless of subsequent testimony, imputing guilt to the defendant. When the case opened for the defendant, Hamilton denied that Curtis bought the drinks. He said that they were ordered by Jenkins and not by Curtis and that when he turned his back, one of them placed the money on the bar in front of Jenkins and that he picked it up assuming that it was Jenkins' money. The court throughout the charge, after a review of the testimony of the defendant as well as that of the Commonwealth, was careful to submit this issue to the jury as one of fact to be determined by their conclusion as to which was to be believed.

From the informality of the admission of Jenkins as a member, the question must have been raised in the minds of the jurors whether this was a bona fide club. The following statement of the trial judge, during the examination of Jenkins, assigned as error, was more favorable than otherwise to the defendant, for it eliminated that question from the issues in the case. Referring to this method of admitting members, the trial judge said: "I say it may be a subterfuge, but it has

nothing to do with this charge. That is something for the Liquor Control Board. In other words, if people set themselves up as a club, and all you got to do is go there and pay a fellow a quarter and sign a card, and then go up and get a drink, that is something else. That is not this charge." Mr. Fenner: "I would like to withdraw a juror, your Honor." The Court: "No. That has nothing to do with this charge. The only thing here is whether or not these defendants, or any of them, sold liquor to the non-member, Mr. Curtis." The court said to the jury that Jenkins *must* be regarded as a member of the club and that the guilt of the defendant could not be predicated upon sales of liquor to him either for his own consumption or that of his guest.

The defendant was not satisfied to allow the matter to rest there, but as a part of his defense offered witnesses in an attempt to justify the procedure by which Jenkins was made a member. Their explanations explain little. This attempt prompted cross-examination of one of the witnesses by the trial judge, without obtaining from him a satisfactory explanation of the method employed. There was no objection to the cross-examination as a whole nor a request to withdraw a juror. The judge's display of impatience with the witness may have been unjudicial and he might well have refrained from an examination of a witness on an issue which already had been excluded from the case. But since the cross-examination was invited by the character of the testimony, defendant cannot now complain, in view of the positive instruction that the club must be regarded as the holder of a license under which it could sell liquor legally to Jenkins and other members of the club, *Com. v. McKeehan et al.,* 93 Pa. Superior Ct. 348.

The alleged sale of liquor to Curtis by defendant O'Neill occurred on November 4, 1940. Hamilton, O'Neill and the third defendant were then taken into custody by the police officers, and according to the testimony

of Jenkins, Hamilton was with him when he questioned two persons in the club who did not have membership cards. He said that they, "in the presence of the defendant, Mr. Hamilton, stated that they were admitted to this club without the membership card, and also purchased and paid for drinks." The refusal to strike out this testimony is assigned as error.

Although there is no contention that defendant sold liquor to these non-members, this testimony was admissible as to Hamilton. He was charged in the indictment with the sale of liquor, "being an officer, to-wit, president," of the club and it is conceded that he held that office. Without specific authority from the board of directors, it is not uncommon for the president of an organization, whether incorporated or not, to be active in the management of its affairs by virtue of his office. The chief executive officer of an organization is its president and there are powers and duties which are inherent in his office. 2 Fletcher, Corporations, §553. Our cases (dealing, however, with the authority of a president to bind a corporation) recognize the principle. *Steam Boat Company v. McCutcheon & Collins,* 13 Pa. 13; *Turnpike Co. v. Pass. Ry. Co.,* 194 Pa. 144, 45 A. 66; *Trust, Etc., Co. v. Record Pub. Co.,* 227 Pa. 235, 75 A. 1067. "The president is the executive agent of the board of directors within the ordinary business of the company:" *Kelly, Murray Inc. v. L. B. & T. Co.,* 299 Pa. 236, 149 A. 190.

But in taking the position that Hamilton was charged with responsibility for the proper conduct of the club, the Commonwealth in this case does not rely upon a breach of those duties which were imposed upon him merely because of his office. Hamilton as president actually managed the club and on occasion took over the duties of doorman or bartender. He testified that when he was shown the warrant for his arrest (immediately before the above statements are alleged to have been made in his presence) he said: "Well, I am

in charge of the club tonight." If so, some responsibility was imputed to him for these illegal sales of liquor by servants of the club whom he had in charge. Cf. *Com. v. Jackson*, 146 Pa. Superior Ct. 328, 22 A. 2d 299. In the absence of proof that the sales to others than members, were against his express orders, evidence of these similar and related offenses was admissible on the specific charge of the indictment against the defendant. They tended to indicate a plan in the operation of the club, under which those in charge, on occasion, countenanced the sale of liquor to non-members. For that reason the evidence was admissible, bearing on the question whether defendant sold the liquor to Curtis in the belief, as he contends, though mistaken, that Jenkins ordered the drinks and paid for them. *Com. v. Strantz*, 328 Pa. 33, 195 A. 75.

Finally, defendant assigns as error the instructions enclosed in brackets in the following excerpt from the charge of the court, referring to the evidence that Curtis bought the drinks, and the defendant's testimony that they were bought by Jenkins. "You have to decide whom do you believe on that point. In connection I just suggest this to the jury as a line of thought, because you have to use your own common sense in these things, your own reasoning powers actually, but I suggest that you can reason it somewhat this way: [What did Jenkins and Curtis go in there for, what was the purpose of their going there? They were plain clothes men for the Police Department, they were trying to get evidence, you see. Could they get any good evidence as to who paid for the drinks, if one of them just laid the money on the counter? What would that prove? So, inasmuch as their purpose was to get evidence, as you can infer from their employment, they are officers, they did not just go in there to get a drink. They are supposed to get evidence by reason of getting a drink. So you have the right to consider in your mind which is the more likely and the more reasonable

story. Is it more reasonable to accept the story of Curtis that he gave him the money. Because that is what they went in there for, to get that evidence. If they did not arrange for Curtis to pay for it, it would not do them any good. The only case they would have against Hamilton would be if Curtis gave him the money. So you may consider that, if it seems sensible to you ......] However, the reasoning of cases is entirely the duty of the jury. The Court cannot reason cases out for the jury, cannot decide cases for the jury; the Court can only lay the case before the jury. But, it is the duty of the Court to guide the jury so far as the court can." A charge should not unduly stress inferences against a defendant (*Com. v. Karmendi*, 325 Pa. 63, 188 A. 752) but we are unable to find reversible error in this discussion. The court may, and depending somewhat upon the evidence and the nature of the testimony and the arguments to the jury, should refer to the issues involved and the possible inferences to be drawn from the facts. *Com. v. Mika*, 171 Pa. 273, 33 A. 65. Expressing confidence in the integrity of the police officers, in itself was not error since the defendant disparaged their testimony. *Com. v. Earl et al., (No. 1)*, 91 Pa. Superior Ct. 447. The trial judge may properly explain to the jury the contention of the respective parties particularly when done in a manner showing that he is not expressing his own views. *Com. v. Prescott*, 284 Pa. 255, 131 A. 184. Even though considered as an expression of the views of the judge, this portion of the charge is not ground for a new trial. It was in no sense a binding instruction, but left the jury entirely free to act. *Com. v. Cunningham*, 232 Pa. 609, 81 A. 711. The charge must be viewed as a whole and an excerpt will not be considered where a consideration of the entire charge shows that the defendant was not harmed by the excerpt. *Com. v. Jones*, 297 Pa. 326, 146 A. 905. "If the whole is accurate and fair, the parts

objected to do not form a proper basis for reversal:" *Com. v. Jones*, 341 Pa. 541, 19 A. 2d 389.

We are unable to find substantial merit in any of the assignments of error.

The judgment of sentence is affirmed and it is ordered that defendant appear in the court below at such time as he may be there called, for compliance with the sentence or any part thereof which had not been performed at the time the appeal was made a supersedeas.