Commonwealth *v.* Yaple, Appellant.

Argued June 8, 1970. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*R. Huhta,* with him *James D. McDonald, Jr.,* and *Quinn, Plate, Gent, Buseck & Leemhuis,* for appellant.

*Frank L. Kroto, Jr.,* Assistant District Attorney, with him *William E. Pfadt,* District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., September 18, 1970:

The defendant, James Joseph Yaple, was found guilty by a jury of violating "The Drug, Device and

Cosmetic Act" of September 26, 1961, P. L. 1664, 35 P.S. 780-1 et seq., more particularly section 4(q) thereof (35 P.S. 780-4(q)), which makes it unlawful to possess any dangerous or narcotic drug.

The defendant made motions in arrest of judgment and for new trial which were refused by the court en banc. The defendant now appeals.

On September 9, 1968, at or about 10:15 P.M., Erie Police Captain Bagnoni, with two of his men, Sergeant Schwartz and Officer Sokolowski, while cruising in a patrol car, observed defendant Yaple and two others (Donald Seifert and Thomas Strick) standing on the lawn of a residence located at 1314 West Grandview Boulevard, Erie, Pennsylvania. The officers testified that as they pulled up they saw the defendant turn his back on them and with his right arm throw an object into a wooded area nearby. The officers found three small plastic bags on the ground at approximately the place where defendant was standing when first seen by the officers. Two of those bags contained approximately 88 white tablets, and the third bag contained approximately 15 green and yellow capsules. When the search into the wooded area in the darkness failed to reveal the object thrown by defendant, the area was revisited the next morning, and after a brief search, Officer Loco of the Erie Police Department found approximately 68 green tablets contained in a cellophane cover from a cigarette package. All the bags were forwarded to the Federal Bureau of Investigation Laboratory in Washington, D.C., for identification. At trial, Elwood Yates, Jr., a special agent with the Federal Bureau of Investigation, testified that some of the pills and tablets contained amphetamine and the remainder contained phenobarbital. He identified the pills as coming within the definition of the term "dangerous drug" contained in the Act under which defendant was in-

dicted, that definition expressly including amphetamines and drugs containing any quantity of barbituric acid (which phenobarbital does contain).

Yaple took the stand in his own defense. He admitted throwing the cellophane packet into the wooded area. He explained that when he and his friends were walking across the lawn he heard something hit the ground and he went over and picked it up just as the police pulled up. He said that when he saw Captain Bagnoni, he threw the object away. Yaple said he thought one of his friends had dropped the object, didn't know what is was, and that he threw it away to avoid trouble with Captain Bagnoni. Apparently there had been some confrontation between Captain Bagnoni and the defendant before that night. Yaple denied any knowledge of the three bags of pills found on the ground where he had been standing.

Yaple called Seifert and Strick as defense witnesses. Seifert testified he did not see the bag Yaple threw until Yaple bent to pick it up and that he did not see any of the other bags on the ground. Yet, he refused to answer whether any of the bags were his because, he explained, the answer might tend to incriminate him.

Strick's testimony was to the same effect. Strick testified that he saw the defendant throw something and then he refused to answer where Yaple obtained what he threw. He was then ordered by the court to testify and he answered that Yaple "picked it up off the ground." He stated he did not see any packages fall, did not see anybody kick any packages or lay any packages down. He said he did not see what Yaple picked up. He denied ever having seen any of the bags prior to the time the police came on the scene, but yet refused to answer whether they belonged to him on the grounds the answer might incriminate him.

We thus have a defendant who admits throwing one bag away but disclaiming knowledge of the contents of that bag or any of the other bags. Further, by innuendo, he implicates his two friends, Strick and Seifert; in turn, these two disclaim knowledge of the bags and their contents, yet claim they would be incriminated if forced to answer as to ownership of the bags. In view of these circumstances, the court below charged the jury: "Concerning the witnesses' taking the Fifth Amendment, any witness has a right to do this when a question is directly asked, the answer to which might incriminate, in other words might state that I have committed a crime, I am not required to answer. In this case we have two different witnesses saying the same thing. When asked if these pills were theirs, each one refused to answer on the grounds that he might incriminate himself. You are, as I mentioned before, at liberty to decide what witnesses you want to believe. That would be something for you to consider in this case, because neither one of them would tell us that he had possession of these items. They have a right to say that, but you can consider it in this case in arriving at the credibility of each witness."

Though defendant Yaple took no specific exception to this portion of the charge, he claimed it as error and relied on it in his motion for new trial. Two members of the court en banc were of the opinion that the trial judge had erred in the above comment on the witnesses' exercise of the right to refuse to incriminate themselves but held that failure to specifically take exception to that portion of the charge precluded the grant of new trial. Rule 1119(b) of the Pennsylvania Rules of Criminal Procedure and the holding of *Commonwealth v. Simon*, 432 Pa. 386, 248 A. 2d 289 (1968), were cited as authority for this decision. A third member of the court en banc filed an opinion

concurring in the refusal of the new trial on the ground that the trial judge's comment did not constitute error. It is with this latter view that we agree.

Article I, Section 9 of the Pennsylvania Constitution provides: ". . . he (the accused) cannot be compelled to give evidence against himself. . ." and the Act of May 23, 1887, P. L. 158, §10, 19 P.S. §631 also provides: "Except defendants actually upon trial in a criminal court, any competent witness may be compelled to testify in any proceeding, civil or criminal; but he may not be compelled to answer any question which, in the opinion of the trial judge, would tend to criminate him; nor may the neglect or refusal of any defendant, actually upon trial in a criminal court, to offer himself as a witness be treated as creating any presumption against him, or be adversely referred to by court or counsel during the trial." Our courts have made it clear that the protection afforded by both the Constitution and the Statute also extends to witnesses. As stated in *Commonwealth v. Tracey,* 137 Pa. Superior Ct. 221, 224, 8 A. 2d 622, 624 (1939): "The provision of Art. I sec. 9 of the Constitution of Pennsylvania that one cannot be compelled to give evidence against himself applies to witnesses no less than the accused (In re Myers and Brei, 83 Pa. Superior Ct. 383) and by the Act of May 23, 1887, P. L. 158 sec. 10, 19 P.S. 631, also, a witness 'may not be compelled to answer any question which, in the opinion of the trial judge, would tend to criminate him.'" In accord are the cases of *Commonwealth v. Katz,* 414 Pa. 108, 198 A. 2d 570 (1964) and *Snyder Appeal,* 398 Pa. 237, 157 A. 2d 207 (1960).

This privilege against self-incrimination has been held to come within the protection afforded by the due process clause of the Fourteenth Amendment of the United States Constitution: *Griffin v. California,* 380

U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965). However, if a witness exercises that privilege and remains silent, a comment relating to that silence or claim of privilege is not automatic error. To constitute error, the comment must be adverse. The rule was stated by this court in *Commonwealth v. Miller*, 205 Pa. Superior Ct. 297, 302, 208 A. 2d 867, 869 (1965) : ". . . it has been held permissible in criminal cases for the trial judge and the district attorney to comment to the jury on the defendant's failure to testify provided it is done fairly and does not attempt to raise any adverse inference in the mind of the jury. The statute prohibits adverse comment; not comment generally." In *Commonwealth v. Reichard*, 211 Pa. Superior Ct. 55, 58, 233 A. 2d 603, 604 (1967), this Court pointed out: "In essence, to constitute error, the comment must indicate a duty of the defendant to testify, and permit an unfavorable inference to be drawn from his failure to do so."

We do not believe that the charge in the instant case was unfair or tended to raise any adverse inferences. The trial judge did not charge the jury that the witnesses should have testified. He did not tell the jury that they could draw any unfavorable inference from the witnesses' refusal to testify. The trial judge in fact told the jury that the witnesses had a right to claim the privilege. He said ". . . but you can consider it in this case in arriving at the credibility of each witness." The witnesses testified that they knew nothing about the bags or the contents thereof, and further that they had not seen them before. Yet, each refused to answer whether the bags belonged to them. The trial judge had the right to call the jury's attention to matters bearing on the witnesses' credibility (*Cohen v. Philadelphia Rapid Transit Co.*, 228 Pa. 243, 77 A. 500 (1910)), and to permit the jury to deter-

mine the credibility of these witnesses by taking into consideration the totality of their testimony, including the claims of privilege.

The defendant next claims that a review of the record reveals no evidence of the control and intent to control necessary to have the jury find physical "possession" of the drugs and that the Commonwealth failed to prove this element. This contention must be rejected.

The word "possession" has a common meaning which is generally understood; there is no requirement that it be defined in the charge: *Commonwealth v. Bozzi*, 178 Pa. Superior Ct. 224, 116 A. 2d 290 (1955). In his charge in this case, the learned trial judge told the jury that the act prohibited was the possession of narcotic drugs and he read the relevant parts of the Act which included the prohibition against possession. Also, it was certainly brought home to the jury in the direct examination and cross-examination of the witnesses and the defendant that the state was trying to show that Yaple had control and possession of the drugs in question. Possession involves the power of control and intent to control: *U.S. v. Curzio*, 170 F. 2d 354 (3d Cir. 1948). The duration of the possession is immaterial in the eyes of the law: *Peachie v. State*, 203 Md. 239, 100 A. 2d 1 (1953); *Sutton v. State*, 170 Tex. Crim. 617, 343 S.W. 2d 452 (1961) (2 cases involving similar narcotics statutes). In the instant case, it is clear from the evidence, and the inferences properly drawn from it, that the defendant did have physical possession and control of the bag of drugs which he threw away at the time the police arrived. We believe this evidence alone is sufficient to sustain the jury's verdict of the defendant's guilt as it related to possession.

240

A review of some cases from this and other jurisdictions lend support to this conclusion. In *Commonwealth v. Hooe,* 187 Pa. Superior Ct. 330, 144 A. 2d 580 (1958), the defendant was in a car which was fleeing from a police car manned by two patrolmen from the Pittsburgh narcotics squad. The defendant, a passenger, disappeared from sight and a moment later a white envelope was ejected from the car window on the left side of the car. The envelope was found to contain narcotics. The defendant escaped but was subsequently captured in another state. At trial, the judge submitted to the jury the question of whether Hooe had the heroin in his possession or under his control. They found that the defendant had possession and control and this court affirmed that result. In a Missouri case, *State v. Small,* 423 S.W. 2d 750 (Mo. 1968), it was held that evidence that police saw the defendant take a box from his pocket (later found to contain narcotics), drop it on the sidewalk and walk away, was sufficient to support a verdict of guilty of possession. In another case, the defendant was seen throwing a toy yellow balloon and later a yellow balloon containing narcotics was discovered in a yard adjoining the defendant's residence. The Supreme Court of Nevada held that this evidence was sufficient to support the conclusion that the defendant had possession of illegal narcotics: *Foy v. State,* 84 Nev. 76, 436 P. 2d 811 (1968).

In the instant case we too must hold that the uncontradicted evidence that Yaple threw away a bag of drugs when the police appeared, was sufficient, in itself, to support a finding of possession.

Although it is unnecessary to examine any further evidence in this case to support the verdict of the jury, we find that there were other facts which would have justified an inference by the jurors that Yaple had

possession and control of the other three bags of drugs on the ground. The jury considered unchallenged testimony that the defendant was standing on top of or in very close proximity to three bags containing drugs. Yaple's friends refused to testify concerning knowledge of the bags on the ground, expressing fears that their testimony might incriminate them. Yaple threw one bag away; he was in a very excited state at the time of these events. From these facts, already proved and admitted, the jury could have logically concluded that Yaple was in possession, solely, or jointly with his friends, of all four bags of drugs. The jury could have reasonably believed that Yaple saw the police coming and only had time to throw away one of the bags of drugs. The jury did not have to believe that the drugs belonged to the defendant alone in order to find that he was in possession. Possession may be joint as well as several: *Commonwealth v. Thurman,* 167 Pa. Superior Ct. 642, 76 A. 2d 483 (1950). Therefore the jury could have found possession on the part of Yaple and found him guilty, even though they felt that Strick or Seifert or both were sharing possession of the drugs with the defendant.

Defendant further claims that the Commonwealth failed to prove and the Court failed to require proof of the element of knowledge on the part of the defendant as to the contents and nature of the drugs contained in the bags. This claim must also be rejected. A jury need not be instructed that in order to find the defendant guilty, proof must be offered of his actual knowledge as to possession of drugs. Knowledge is not an essential element of this offense.

This Court and our Supreme Court have stated that criminal intent or guilty knowledge need not always be shown to support a conviction under a valid statute: *Clem's Cafe Liquor License Case,* 425 Pa. 94, 227 A. 2d 491 (1967); *Commonwealth v. Gorodetsky,* 178

Pa. Superior Ct. 467, 115 A. 2d 760 (1955). The Legislature may decide that a threatened harm to the public is so serious that it justifies an absolute prohibition. In such cases, the Legislature will provide that guilt may be established without any requirement that the defendant be proved to have had a specific criminal intent or knowledge in acting. Whether or not criminal intent or guilty knowledge is a necessary ingredient of a statutory offense, therefore, is a matter of construction to be determined from the language of the Statute and its manifest purpose and design: *Commonwealth v. Fine,* 166 Pa. Superior Ct. 109, 113, 70 A. 2d 677, 679 (1950) ; *Commonwealth v. Hackney,* 117 Pa. Superior Ct. 519, 524, 178 A. 417, 419 (1935).

The Statute under which this defendant is charged, "The Drug, Device and Cosmetic Act of 1961", was derived from the Anti-Narcotic Act of 1917. The purpose of that Act of 1917, as stated by the Legislature, was: ". . . For the protection of the public health by regulating the possession, control, dealing in, giving away, delivery, dispensing, administering, prescribing, and use of certain drugs, . . ." This Court in *Commonwealth v. Gorodetsky,* supra at 477, 115 A. 2d at 765, made the following comment on the 1917 Act: "The purpose of the act would be defeated if proof of criminal intent or guilty knowledge was required, since it would usually be impossible to prove, beyond a reasonable doubt, as appellant contends, that anyone illegally possessing or unlawfully dispensing such drugs had actual knowledge of their narcotic content. That the Legislature did not require criminal intent or guilty knowledge to be shown in order to punish those who traffic in such drugs is further evidenced by the language of the statute itself."

A reading of §780-4(q) of the Act of 1961, which is the relevant section in this inquiry, reveals little dif-

ference in language from the earlier provision.[1] There was again no mention in this 1961 anti-narcotic statute of any specific mens rea necessary to support a finding of guilt, though it was enacted after our *Gorodetsky* decision. The Legislature thus has clearly indicated that intent is not to be considered an essential ingredient in this offense and that the 1955 *Gorodetsky* reasoning is still applicable.

Therefore, considering the objective sought to be accomplished by the Legislature, the language of the Statute itself, and the evidence presented, we conclude that the trial judge was correct in refusing to require that the jury find specific criminal knowledge or intent on the part of the defendant before adjudging him guilty of the offense charged.

Yaple then makes the most surprising contention that prejudicial error was committed by the court in failing to include in its charge an explanation that a police officer and police officers are interested parties. To permit a charge to the effect requested by defendant would be tantamount to stating that as a general rule police officers are only interested in convictions and not in the furtherance of justice, an assumption which will not and should not be tolerated by any court, and the court below properly refused to grant defendant's request. On the contrary, in view of the attack made on Police Captain Bagnoni's objectivity, it would not have been error for the trial judge to have expressed confidence in the integrity of police officers as has been done in other cases in this juris-

---

[1] §780-4 Prohibited Acts

" The following acts and the causing thereof within the Commonwealth are hereby prohibited: . . .

(q) The possession, control, dealing in, dispensing, selling, delivery, distribution, prescription, trafficking in, or giving of, any dangerous or narcotic drug. . . ."

diction. See *Commonwealth v. Hamilton,* 148 Pa. Superior Ct. 169, 24 A. 2d 656 (1942) ; *Commonwealth v. Earl,* 91 Pa. Superior Ct. 447 (1927).

None of the defendant's contentions having merit, the court below properly refused his motions for new trial and in arrest of judgment.

The judgment of sentence is therefore affirmed.