400 A.2d 168

**COMMONWEALTH of Pennsylvania**

v.

**Edward BARNOSKY, Appellant.**

Superior Court of Pennsylvania.

Submitted October 26, 1978.

Decided March 21, 1979.

Michael L. Stibich, Assistant Public Defender, Ebensburg, for appellant.

Gerard Long, District Attorney, Ebensburg, for Commonwealth, appellee.

Before PRICE, HESTER and LIPEZ, JJ.

HESTER, Judge:

Following a jury trial, appellant Edward Barnosky, on December 14, 1976, was found guilty of rape, felonious restraint, involuntary deviate sexual intercourse, and kidnapping.[1] Post-trial motions were argued and denied and an aggregate sentence of eleven to twenty-five years imprisonment was imposed. On this direct appeal, appellant advances three issues for our determination:

1) whether the lower court should have quashed the information as to involuntary deviate sexual intercourse (IDSI);

2) whether the lower court should have charged the jury to carefully scrutinize the testimony of two juvenile witnesses;

---

1. Crimes Code, 18 Pa.C.S.A. § 3121, 2902, 3123, 2901 respectively.

3) whether the lower court should have charged the jury on an adverse inference it may draw from the failure of the Commonwealth to call certain witnesses.

We find these arguments without merit and will affirm.

Testimony adduced at trial revealed the following scenario. In the early evening hours of September 14, 1976, the victim, a 17 year-old woman, was playing kickball with some younger children near her home in Nanty Glo, Cambria County, Pennsylvania. Appellant, driving a 1959 Volkswagen convertible, drove up and asked the children the whereabouts of one Brenda Henry. When the children replied they did not know who Miss Henry was, appellant said he was getting cold and requested aid in putting up the roof of his car. The victim, who did not know appellant before this incident, got in the car and was assisting him with the roof latch when appellant grabbed and restrained her and quickly drove away with her.

Via a circuitous route, appellant drove to his apartment in Barnesboro, approximately 15 miles distant from the point of abduction. Continuing to restrain the victim, appellant escorted her to his first floor flat and locked the door behind them. When she began to scream and struggle, appellant told her he was taking her home. Another drive around the area ensued at the conclusion of which appellant again forced the victim into his apartment, locking the door. He removed the victim's clothing, told her he had a gun and was going to kill her, and proceeded to rape her. When he was finished, he went into another room and fell asleep. The young woman quickly dressed and left the apartment.

Cruising nearby were officers Leary and Hassen of the Barnesboro Police Department. They had already been informed of the Nanty Glo abduction earlier in the evening, and when they saw the victim running along the road, they picked her up. At her direction, the officers staked out appellant's apartment for several hours and, when appellant exited and got in his car, the officers gave chase. He was stopped a short distance therefrom and arrested.

Appellant's version of events of that evening, obviously disbelieved by the jury, stressed the consensual nature of the victim's actions. Appellant testified she willingly accompanied him for a ride around the neighborhood. When they arrived at the apartment, appellant "dozed off or passed out or something", N.T. 156 and upon awakening, discovered the victim was gone. He insisted there was no rape or assault and that she voluntarily accompanied him that night. Further, appellant denied he eluded the police just prior to his arrest.

Appellant first contends that at his preliminary hearing the magistrate dismissed the charge of IDSI and hence, the court should have quashed the information as to that count. The record, however, does not bear out his contention. In compliance with Pa.R.Crim.P. 146, the district magistrate prepared and returned a transcript of the proceedings to the Cambria County Court containing all of the data required to be recorded under Rule 26. The docket transcript lists all of the charges lodged against appellant, but in the column marked "disposition" beside each charge no mark appears indicating whether each count had been bound over or dismissed. This defect is cured, however, in another portion of the transcript wherein there is a summary of each witness' testimony and then this conclusion: "After hearing all the testimony, Magistrate Brosius found a prima facie case against the defendant, Edward Barnosky, and return to Cambria County Court." Although it would be preferable to list individually the magistrate's disposition for each count in the complaint, we think that absent compelling evidence to the contrary,[2] the transcript before

___

2. There was no stenographer present at the preliminary hearing. The argument of trial counsel that the IDSI was dismissed was based on his own recollection of the proceeding. Further, the district attorney, at a bond hearing shortly after the preliminary hearing, stated, "That was withdrawn, the devious [sic] sexual intercourse; there was no evidence to sustain it." Bond hearing, 9/23/76, p. 10. To resolve the matter, the trial court contacted the district justice by phone and then stated on the record:

"THE COURT: I have just talked with Magistrate Frank Brosius. He has reviewed his notes and he indicates he has nothing in his notes to

us is in substantial compliance with Rule 146 and is conclusive that all charges, including IDSI, were bound over. Compare, *Commonwealth v. Trivelli*, 253 Pa.Super. 34, 384 A.2d 962 (1978) (defect in preliminary hearing transcript, which failed to specify disposition of drug charge, not cured by any other portion of transcript; failure of Commonwealth to move to amend, pursuant to Rule 147, required that count to be quashed).

Appellant next complains of the trial court's failure to admonish the jury to carefully scrutinize the testimony of two youthful Commonwealth witnesses, Michelle DeRubis, age nine, and Danny _____, age twelve, brother of the victim. Both children were among those playing kickball with the victim when appellant approached. Michelle could only testify that "a guy" approached in "a jeep" and asked "where some lady lived". N.T. 9. Michelle recalled that the victim got in the man's car to help with the roof but Michelle could not testify to seeing the victim forcefully abducted; nor could she identify appellant as the man in the car. Danny, on the other hand, testified the man in the car "grabbed [the victim] and took off down the road." He identified appellant as his sister's assailant. N.T. 35, 36.

Appellant does not challenge the competency of either Michelle or Danny to testify, see, *Commonwealth v. Mazzoccoli*, 475 Pa. 408, 380 A.2d 786 (1977),[3] but rather he argues the jury should have been charged, because of the youthfulness of the witnesses, to receive their testimony with caution. The general rule is that the credibility of all witnesses is in the exclusive province of the jury. *Common-*

indicate dismissal of the charge that's the basis of your motion to quash. Based on the face of the record, as well as the conversation with the magistrate, I am denying your motion." N.T. p. 3.

3. It nonetheless appears that appellant's proposed charge emanated from the difficulty the district attorney experienced in qualifying his witnesses. Tommy Buck, age eleven, one of the children playing kickball, was not permitted to testify because of the failure of the D. A. to demonstrate Tommy could understand the oath and the D. A.'s questions. Similarly, Donna Helena, age nine, was found by the court not competent to testify after it was shown she did not understand why she must tell the truth.

*wealth v. Farquharson,* 467 Pa. 50, 354 A.2d 545 (1976). The jury is to assess the weight to be accorded each witness' testimony and may believe all, part, or none of what they hear. *Commonwealth v. Myrick,* 468 Pa. 155, 360 A.2d 598 (1976); *Commonwealth v. Bridell,* 252 Pa.Super. 602, 384 A.2d 942 (1978). In certain instances it is required that the court charge the jury to carefully scrutinize a witness' testimony, as is the case with accomplice testimony. *Commonwealth v. Thomas,* 479 Pa. 34, 387 A.2d 820 (Pa.1978); *Commonwealth v. Sisak,* 436 Pa. 262, 259 A.2d 428 (1969) (accomplice testimony comes from "corrupt source"); testimony of an informant, *Commonwealth v. Donnelly,* 233 Pa.Super. 396, 336 A.2d 632 (1975); and weak identification testimony, *Commonwealth v. Kloiber,* 378 Pa. 412, 106 A.2d 820 (1954). In other situations, the court may *not* charge the jury to scrutinize a witness' testimony under a standard different from that applicable to any other witness, as is the case with rape victims, 18 Pa.C.S.A. § 3106, and police officers, *Commonwealth v. Yaple,* 217 Pa.Super. 232, 273 A.2d 346 (1970) (court may not charge that police officers are interested parties). Although our court has sanctioned an "infant witness" charge as here requested by appellant, *Galazia v. McKim,* 210 Pa.Super. 144, 232 A.2d 213 (1967), we decline to adopt a per se rule requiring such a charge merely because a child of tender years has testified. Rather, we think the matter is better left to the sound discretion of the trial judge based upon his observation of the child's testimony and the youth's mental and emotional maturity. See, *Commonwealth v. Balles,* 160 Pa.Super. 148, 50 A.2d 729 (1947). Once the initial determination is made that the child is a competent witness, then the general charge on credibility will usually suffice as to all witnesses.

■ Instantly, both Michelle and Danny recounted the facts of their experience clearly and consistently. The record of their testimony does not reflect any tendency " 'to the world of make-believe and of suggestions.' " *Galazia, supra,* 210 Pa.Super. at 149, 232 A.2d at 215. The court charged comprehensively on the test of credibility regarding all

witnesses. N.T. 198–200. In view of the children's testimony and court's charge, we do not think the denial of the infant witness charge deprived appellant of a fair trial.[4]

■■■■ Appellant's final assignment of error relates to the court's refusal to charge on the adverse inference the jury may draw from the failure of the Commonwealth to call three witnesses. One such witness was Richard Helena, age twelve, one of the children playing kickball. The other two uncalled witnesses were the Barnesboro police officers who participated in appellant's arrest. Prior to trial, the Commonwealth apparently gave to the defense, in response to a request for a bill of particulars,[5] a list of potential witnesses and never informed the defense that certain witnesses listed therein would not be called. The general rule is well settled:

> " '[W]hen a potential witness is available to only one of the parties to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not be merely cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference it would have been unfavorable. (citations omitted).' "

*Commonwealth v. Jones,* 455 Pa. 488, 495, 317 A.2d 233, 237 (1974); *Commonwealth v. Gibson,* 245 Pa.Super. 103, 369 A.2d 314 (1976); *Commonwealth v. Whyatt,* 235 Pa.Super. 211, 340 A.2d 871 (1975). It is equally established that the prosecutor is not obliged to call all eye witnesses to a crime, particularly where he believes after due investigation that a witness' testimony may be unreliable, unimportant, irrelevant, or merely cumulative. *Commonwealth v. Smith,* 227 Pa.Super. 355, 324 A.2d 483 (1974); *Commonwealth v. Paull,* 250 Pa.Super. 416, 378 A.2d 1006 (1977). The calling of

4. Other jurisdictions are in accord with this view. *Lewis v. State,* 264 Ind. 288, 342 N.E.2d 859 (1976); *People v. Webb,* 143 Cal.App.2d 402, 300 P.2d 130 (1956).

5. Although both sides agree that such a list exists and was given to the defense, no list or bill of particulars are included in the record before us.

witnesses is within the discretion of the prosecution under the general direction of the trial judge. *Commonwealth v. Thurman,* 167 Pa.Super. 642, 76 A.2d 483 (1950).

■ Here, the trial court did not abuse its discretion in refusing the requested point for charge. There were six children playing ball in the street and the prosecutor called five of them. Two were found incompetent to testify and three ultimately testified to essentially consistent factual settings. In view of such cumulation of testimony it would ·have been mere surplusage to offer that of the sixth child. *Gibson,* supra.

■ Similarly, we do not see how the testimony of the two uncalled police officers (Officer Hassen and Chief Sharkey) could offer anything more than information of "marginal usefulness to either side." *Paull, supra.* The crux of appellant's contention is apparently that Officers Hassen and Sharkey were in a good position to observe any attempted flight by appellant just prior to arrest, and the flight testified to by Officer Leary created an inference of guilt in the minds of the jurors. Appellant argues the uncalled officers may have testified there was no flight by appellant, thus erasing the flight inference of Leary's testimony. The record simply does not bear out appellant's argument. Officer Leary, in the early morning hours of September 15, had positioned himself just 100 yards from appellant's flat waiting for the suspect to exit. When appellant did come out, Leary saw him get into the Volkswagen and drive past the police vehicle in which Officers Hassen and Sharkey were stationed. Leary saw the squad car's red light begin to flash and saw Hassen jump out in front of appellant's car in an attempt to stop him. From a distance of 250 yards, in a well lighted area, Leary saw Hassen leap out of the way of the Volkswagen as appellant's car sped past. In view of Leary's unobstructed view of these events, the testimony of Hassen or Sharkey would have been merely cumulative on any inference of flight perceived by the jury. Appellant was not entitled to the requested charge.

Judgment of sentence Affirmed.