Commonwealth *v.* Berklowitz et al., Appellants.

Argued October 17, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Lemuel B. Schofield,* with him *Harry A. Mackey,* for appellants.

*Vincent A. Carroll,* Assistant District Attorney, with him *Charles F. Kelley,* District Attorney, for appellee.

OPINION BY PARKER, J., November 18, 1938:

The defendants were charged with assault and battery, aggravated assault and battery, assault and battery with intent to ravish and with rape. They were tried by one jury, convicted on all indictments and sentenced. Their individual appeals will be considered in one opinion. We are compelled to reverse the judgments by reason of the failure of the trial judge to charge the jury as to its duty to consider whether the alleged victim made prompt complaint of the rape charged, written requests for such instructions having been submitted to the trial judge and refused.

The Commonwealth relied largely upon the testimony of the prosecutrix to make out a case. She testified that she was a show girl with a company performing at the Chestnut Street Opera House in Philadelphia, that she was a married woman 26 years of age, that when she left the theatre by a rear entrance on Friday, December 3, 1937 at about 11:30 P.M. she was seized by the two defendants with whom she had no previous acquaintance and placed between them on the front seat of a Ford automobile, that she was paralyzed with fear by reason of certain actions and statements of the defendants, that she was driven to Frankford, a distance of about 7 miles, when she was taken to the "41 Club" where about 150 guests were engaged in drinking and dancing, that she sipped several drinks of liquor which were purchased for her and danced with each of the defendants, that after an hour and a half, in answer to her pleas to be taken home, she left the club and entered their automobile, that she was then driven to a vacant lot in the vicinity of the Zoological Gardens where each of the defendants had inter-

course with her in the back seat of the automobile forcibly and against her will, that she was then taken to her hotel and that she was a stranger in Philadelphia and did not know the city but with the assistance of police officers later located the scene of the attack.

The husband of the prosecuting witness resided in New York. On Saturday morning, December 4th, her husband joined her at Philadelphia and remained with her until Monday morning. She did not report the attack to her husband or anyone else until five days later when she reported the occurrence to the police. She stated that the defendants were again following her after performances on Saturday, Monday and Tuesday and that she was fearful that they would again do her some harm. She then testified as follows: "Q. How did you come to report it to the police officer in uniform in the Mayflower Tea Room at 11th and Chestnut? Why did you report it at that particular time? A. Because they had been coming around, following me; I didn't want the same thing to happen over again, but perhaps a whole lot worse than what really happened. Q. That is what made you report it? A. That is what made me tell what was on my mind, finally." The prosecuting witness gave an explanation for the delay in making her complaint but it is not necessary at this stage to consider the details of such testimony.

In prosecutions for rape the courts have laid down certain tests which are to be employed in ascertaining the truthfulness of the party making a charge of the character here involved. The authorities are in agreement that her evidence should be carefully considered in determining whether the act was with or without her consent. Ordinarily proof of the failure of the female to make an outcry and complaint tends to show that she consented to the intercourse. In *Com. v. Moran,* 97 Pa. Superior Ct. 120, 123, we quoted with approval from Ruling Case Law as follows: " 'Proof of complaint has always been treated as a most material element in

the establishment of a charge of rape, and unless complaint is found to have been made by a prosecutrix in a given case, the want of it weighs heavily against the prosecution, and in favor of the accused, unless satisfactorily explained.' "

In *Stevick v. Com.,* 78 Pa. 460, a conviction was affirmed where this language was used by the trial judge: "It has been deemed an important test of the sincerity of the woman, that while the commission of the offense was in progress she cried aloud, struggled and *complained on the first opportunity,* and prosecuted the offender without delay." (Italics supplied.) Also see *Com. v. Parr,* 5 W. & S. 345, 347. In view of the state of the testimony it was the duty of the trial judge to instruct the jury that her testimony should be scrutinized with care in determining whether she consented to the acts, or whether, as she asserted, they were committed forcibly and against her will. "Actual resistance, outcry and prompt complaint are matters which should have been brought to their attention": *Com. v. Moran,* supra.

The trial judge in the charge failed to instruct the jury on the subject of complaint notwithstanding the refusal of written requests of the defendant for charge as follows: "17. The credibility of the accuser is always to be weighed by the jury. 18. In a case of rape, certain corroborations are looked for:—it is natural for the victim to reveal the offense to others, in order that the offender may be properly dealt with. One inquiry then is: 'Did she make an early complaint to one to whom she would probably make it if it really happened?' 19. If you find from the evidence that prosecutrix concealed the alleged injury after she had an opportunity to make complaint, it is a circumstance to be considered by you in weighing the credibility of her testimony."

While a trial judge is not bound to adopt the language of counsel, as he may choose his own form of expression (*Struppler v. Rexford,* 326 Pa. 545, 548, 192

A. 886), he may not refuse a request for charge on an essential matter which correctly states the law and which he has not covered in his general charge: *McNees v. Sims,* 231 Pa. 386, 80 A. 866; *Peoples S. Bank v. Denig,* 131 Pa. 241, 249, 18 A. 1083. The learned trial judge might have improved upon the language used in these points but he was not justified in refusing both points when he had not referred to the matter in his general charge. The credibility of the evidence of the female in a trial for rape is vital and it is of great importance that the long established tests should be called to the attention of the jury. We are of the opinion that the failure of the trial judge to either affirm the points as submitted or cover the matter in language of his own choice constituted error.

The appellant also complains of the refusal of the trial judge to strike from the record certain questions and answers propounded by the judge. The testimony of the prosecutrix as to the extent of her resistance was not as complete as it should have been. The trial judge then asked her a number of questions. These questions were not objected to at the time, but at the end of the trial a motion was made to strike them from the record on the ground that they were leading questions. If objection had been made at the time the questions were propounded we have no doubt the able trial judge would have reformed them. A trial judge, when the interests of justice require it, may interrogate a witness, but it is preferable that counsel should clear up disputed and doubtful points. The trial judge should exercise with caution his right or duty in this respect: *Com. v. Myma,* 278 Pa. 505, 508, 123 A. 486. A judge should not ask a leading question when it would be improper for counsel to lead the witness. Care should also be exercised by the court in expressing or intimating an opinion as to what has or has not been proved: 70 C. J. 562, 563.

The judgment in each appeal is reversed and a new trial awarded.