Commonwealth *v.* Balles, Appellant.

Argued November 12, 1946. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Henry Weiss,* with him *Edward B. Duffy* and *Bernard L. Lemisch,* for appellant.

*Henry Stuckert Miller,* Assistant District Attorney, with him *Frederick B. Smillie,* District Attorney, and *Alexander Knight,* Assistant District Attorney, for appellee.

PER CURIAM, December 13, 1946:

The judgments of sentence are reversed and new trials awarded. An opinion will be filed later.

---

OPINION BY HIRT, J., January 17, 1947:

In 1940, defendant established Warminster Military Academy, a small private school in Bucks County. During August 1945 the academy was moved to property acquired by defendant near Three Tuns in Montgomery County. There were about 25 boys, between 7 and 15 years of age, and 4 girls, in attendance, and all of them were resident pupils. Defendant's wife Laura Balles assisted in the conduct of the school and lived with defendant and their five-year-old daughter in a family relationship on the premises, in the main building which served as a dormitory for all of the pupils. Defendant was headmaster; there was an additional faculty of about four instructors.

About 9:30 in the evening of January 12, 1946, defendant's car, parked on a side road, attracted the attention of a police officer who was patrolling an intersecting highway. His spot-light disclosed the defendant on the front seat of the car with Joyce Owens, an eleven-year-old pupil of the school, in a compromising position, indicating that he had been tampering with the child. Defendant, in a signed statement, admitted contact but denied penetration. On the testimony of this girl, defendant was convicted of statutory rape. He was convicted on other indictments of statutory rape of Shirley Owens, a fourteen-year-old resident pupil of the school, and, of solicitation of sodomy. Defendant was sentenced on these convictions. He was convicted also

of other related charges on the testimony of these two girls. All of the charges against this defendant were consolidated for trial with indictments against Laura Balles, his wife. She was found guilty of aiding and abetting this defendant in consumating the statutory rape of Shirley Owens, and of assault and battery of this girl and Joyce Owens. On the testimony of these two girls she was also convicted of contributing to their delinquency and corrupting public morals. For reasons stated in the opinion of the lower court a new trial was granted, and properly so, as to her. From a consideration of the record and of the arguments on the present appeal we were all of the opinion that this defendant was prejudiced by the cumulative effect of circumstances and incidents of his prosecution and trial, amounting to a denial of due process of law. For this reason we ordered a new trial as to him also. Though this defendant may be guilty of charges against him, his innocence must be assumed until his guilt has been established in a fair and impartial trial. "Law must be the servant of justice, and courts of justice will not be blind to any breach of basic rights or impotent to vindicate them": *Com. v. Corrie*, 302 Pa. 431, 437, 153 A. 743. This was a sensational and highly publicized trial requiring exceptional care to protect the rights of the defendant. In spite of the constant intention of the trial judge that impartiality attend the trial throughout, in our view this result was not attained.

Defendant was arrested on January 12, 1946; true bills were found by a grand jury on January 21, 1946, and the cases were set for trial. He moved for a continuance but was granted a stay of but one month and the cases came on for trial on March 4, 1946. Because of the revolting nature of the crimes charged to both defendants, and the avidity with which the newspapers of the community publicized lurid details of the alleged offenses, the atmosphere of the whole community was

prejudicial to this defendant when brought to trial. A continuance of the trial well might have been granted to a later and calmer term, when jurors would be less likely to be affected by the sensationalism of the wide publicity given these cases in the public press. There are frequent references throughout the record of this case to the character and volume of publicity which these charges invited from the newspapers. We need not refer to them specifically. The trial judge recognized the prejudicial effect of this publicity by excluding the public from the court room as a "necessary precaution to prevent any demonstration by an audience *hostile* to the defendant". Because of general adverse public opinion in the county it is doubtful that the defendant, even though wholly innocent, could have been acquitted of the charges, under the circumstances.

The indictments against defendant and against his wife, based on the original informations, were augmented by District Attorney's bills to a total of 23 bills against this defendant and 14 against Laura Balles, all charging sex offenses. When these defendants were called for trial, some of the indictments were quashed and others were withdrawn, then, or later in the course of the trial. Demurrers to the evidence were sustained as to other charges. The multiplication of indictments in itself was objectionable (*Com. v. Petrillo*, 338 Pa. 65, 96, 12 A. 2d 317; Cf. *Com. v. Tracey*, 137 Pa. Superior Ct. 221, 8 A. 2d 622) especially because of the comment of the District Attorney upon them. In opening to the jury he said: "The Commonwealth will show you . . . that the general condition of the school was not that of one to teach lessons in reading, writing, and arithmetic, but that Mr. and Mrs. Balles conducted a school along lines that the Commonwealth says were corrupt and *according to the bills of indictment* debauched public morals, in that they taught the children sex more than they taught anything else." (Italics supplied.) The

phrase which we have emphasized suggests that the charges of sex offenses were deliberately multiplied, though many of them were baseless, to support the spurious argument that sex in its perversion was the major subject of the curriculum.

To find the defendant guilty of the statutory rape of Shirley Owens, the jury had to accept her story, which is almost too fantastic for credence. This girl testified that defendant had intercourse with her on four occasions in the common bed of defendant and his wife. She charged that the wife was present on every occasion and took an active part in assisting them in the mechanics of copulation. This testimony is almost, if not wholly, unbelievable in the absence of other proof of low degeneracy in the wife. The lower court in granting a new trial as to Laura Balles, said: "Shirley impressed the trial judge as an emotional and imaginative girl. She had attempted to commit suicide. She had told a story of a boy friend in a concentration camp in Germany, which was pure imagination. She admitted having sex experience before coming to Warminster Academy. The acts ascribed to the defendant by this witness, are so unnatural and revolting, that their very enormity raises a doubt as to whether they ever happened". Sex delinquency is likely to change the personality and affect the truthfulness of even a young girl; testimony is not necessarily acceptable as truth merely because of the youth of the witness. In view of the trial judge's estimate that Shirley was unreliable, the jury well might have been instructed to scrutinize her testimony with care. Cf. *Com. v. Berklowitz,* 133 Pa. Superior Ct. 190, 2 A. 2d 516.

Following defendant's counsel in his final argument to the jury, the District Attorney said: "If a mistake is made by the Commonwealth, the defendant goes free and he can't be arrested. If you find him not guilty, nothing can be done about it ever again, but if the Com-

monwealth makes a mistake, if this is a mistake, my talking to you this way, he can take advantage of it and be discharged and acquitted. He can take this case up and up and up, and that, members of the Jury does not lie with the Commonwealth. This is our only chance. And members of the Jury, that is important and that is one of the reasons I say to you it is terribly important to you, not to me, I am not on trial, no need of me thinking about it, but the Commonwealth is trying to protect you against this sort of crime and polluting and corrupting the morals of our children. Don't think that the human mind is not capable of perpetrating heinous crime. The Beasts of Belsen did, and the women were some of the worst offenders. Terrible things can come out of the human mind and I beg of you to recollect *that you can put a stop to this thing, especially now, and I ask and beg of you to find these defendants guilty as they stand charged."* (Italics supplied.) The lower court found this language prejudicial as to Laura Balles in granting her a new trial. It was equally prejudicial to this defendant. The following, from the opinion in *Com. v. Williams,* 309 Pa. 529, 535, 164 A. 532, is pertinent here: "We must again forcibly repeat 'That the district attorney is a quasi-judicial officer, representing the Commonwealth, which seeks no victims, but only justice; . . . since he is invested with these grave responsibilities, he should at all times, conduct the Commonwealth's case fairly, present it in an impartial manner, and avoid seeking to influence the jury by arousing their prejudicies.' Com. v. Cicere, 282 Pa. 492." The District Attorney distorted a fundamental concept of the criminal law by arguing "If a mistake is made by the Commonwealth, the defendant goes free" and can't be tried again. This falacious argument coupled with the reference to the "Beasts of Belsen" and the language "I *beg* of you to find these defendants guilty as they stand charged" was an emotional appeal to convict this defendant regard-

less of the evidence. The effect well may have been to arouse in the minds of the jurors "a fixed bias and hostility toward the defendant" preventing them from weighing the evidence fairly and dispassionately. Cf. *Com. v. Meyers,* 290 Pa. 573, 139 A. 374; *Com. v. Shoemaker,* 240 Pa. 255, 87 A. 684.

It is not necessary for us to determine whether these remarks of the District Attorney, alone, constitute reversible error in the absence of motion of defendant's counsel to withdraw a juror and continue the cases. We granted a new trial, because of the total effect of the matters to which we have referred, regardless of defendant's failure to take advantage of them in the course of the trial, (Cf. *Com. v. O'Brien,* 312 Pa. 543, 168 A. 244) in the exercise of our broad powers under the Act of June 24, 1895, P. L. 212, as amended, 17 PS 111 et seq. Cf. *Com. v. Kahn,* 116 Pa. Superior Ct. 28, 176 A. 242.