## Commonwealth v. Jones

*M. Jack Morgan*, district attorney, and *George J. Joseph*, assistant district attorney, for Commonwealth.

*L. R. Long*, for defendant.

HENNINGER, P. J., July 12, 1954.—On May 5, 1953, in response to a police radio call, Patrolman Zeller of the Allentown Police Department sighted a 1949 Buick and followed it for over a mile until he was able to stop the car. The car weaved and was frequently on the left side of the street.

When he stopped the car, he found defendant behind the wheel and her husband slumped in the seat beside her in such a position that the policeman had been unable to see him while following the car.

The patrolman was convinced from defendant's appearance and from a partially consumed bottle of liquor in the car that defendant was intoxicated, so he radioed for his captain, who came to the same conclusion. They took defendant and her husband, who was obviously intoxicated, to the police station where Dr. Weaber examined defendant and declared her under the influence of intoxicating liquor and unfit to operate a motor vehicle.

Defendant denied being intoxicated or having consumed any liquor from the bottle but admitted having drunk 3 Old Fashioned cocktails before having had lunch in a local restaurant just before the arrest.

The jury found her guilty of driving while under the influence of intoxicating liquor. She has moved for arrest of judgment because of the presence of her husband in the car and the uncontradicted testimony of herself and husband that he had asked her to drive, and for a new trial because: (1) Verdict contrary to evidence and weight of evidence; (2) offense committed in the presence of her husband; (3) admission into evidence of the bottle found in the car defendant was driving; (5) failure of the court to take judicial notice that three Old Fashioneds cannot intoxicate; (6) remarks of district attorney permitting inference that defendant might have drunk from the bottle; (7) prejudicial remarks by the district attorney during his closing address.

There was ample evidence from defendant's manner of operation of her car, her appearance, her medical examination and her recital of drinking to support the finding of intoxication. Defense counsel did not stress the very dubious point that three Old Fashioneds cannot intoxicate and furthermore, the verdict was based not so much on the amount consumed as on defendant's state when arrested immediately after driving. That distinguishes this case from Commonwealth v. Mil-

ligan, 172 Pa. Superior Ct. 607, 614, in which a new trial was granted because, among other things, the lower court had charged that defendant could be convicted on the testimony alone that defendant had consumed one and one-half highballs.

Neither court nor jury is bound to accept as verity the uncontradicted testimony of an interested party even though it may be corroborated by that of a witness who could well be biased in his wife's favor: Nanty-Glo Borough v. American Surety Co., 309 Pa. 236, 238; Schwoerer v. Philadelphia et al., 167 Pa. Superior Ct. 356, 359; Commonwealth v. Long, 131 Pa. Superior Ct. 28, 33.

That leaves three matters stressed by defense counsel; (1) The presumption of compulsion; (2) the bottle, and (3) the district attorney's remarks.

It would be strange indeed if a partially consumed bottle of liquor found at defendant's feet in the car she was driving would not be considered competent evidence when the driver's intoxication is at issue. It is true that it was her husband's car, she denied having drunk from the bottle and her husband later gave an explanation for the presence of the bottle that would have absolved defendant, but the jury was not bound to believe either the denial or the explanation. (See cases cited above). The presence of the bottle was not conclusive of defendant's guilt and no one inferred that it was. It was, however, one item of evidence to consider with all the other evidence for what weight the jury decided to give it. In Commonwealth v. Marks, 164 Pa. Superior Ct. 280, 283, the court remarks that defendant was "found . . . with an almost empty bottle of whisky by his side".

In his address in reply to defense counsel's closing address, the assistant district attorney stated in effect:

"I must confess I have been shocked of accusations made as wild and so completely opposite to the facts in

the case. . . . Mr. Long (defense counsel) points to the people for the Commonwealth as vicious. . . . I am shocked as it should come from Mr. Long and that I hope that after this case is over that he will tell me that he did not mean it".

Inadvertently defense counsel failed to ask for the withdrawal of a juror, but the court stated: "They [the assistant district attorney's remarks] may be placed upon the record and the motion is denied". We treat the incident, therefore, as if such a motion had actually been made and denied.

The district attorney is a quasi-judicial officer, representing the Commonwealth, which seeks no victims, but only justice;

". . . since he is invested with these grave responsibilities, he should, at all times, conduct the Commonwealth's case fairly, present it in an impartial manner, and avoid seeking to influence the jury by arousing their prejudices": Commonwealth v. Williams, 309 Pa. 529, 535; Commonwealth v. Balles, 160 Pa. Superior Ct. 148, 153.

The quoted remarks of the district attorney were indeed mild in this case. While we cannot recall the details of defense counsel's closing address, we distinctly recall that we considered the district attorney's quoted remarks (the grammatical errors are not his or Mr. Long's) to have been evoked by the tenor of defense counsel's address and to have been a forthright but seemly reply thereto.

There was absolutely nothing in the testimony which indicated that any of Commonwealth's witnesses was guilty of high-handed, arbitrary or unjust treatment of either defendant or her husband, who admitted to drinking seven Old Fashioneds and to the impropriety of his driving the car.

The most serious problem in this case is that of the presumption that when a woman commits a crime in the presence of her husband, she is doing it under his

compulsion and cannot be held criminally responsible for her acts so committed.

The testimony as to actual compulsion is very weak. There are four versions of one statement by defendant's husband to her as they entered their car. Defendant testified that her husband, on leaving the restaurant "gave me his keys and asked me to drive" and that he said "you drive, Dot". Her husband stated he said, "Dot, I think maybe you better drive, because you had practically nothing and I just don't want to drive," and "Here, you drive this car. You might as well start learning now". Defendant professed no feeling of compulsion. We charged the jury at defendant's request: "The presumption in this case is that the wife acted under compulsion of the husband; . . . The burden of proof that the wife was not acting under coercion of her husband is upon the Commonwealth," and "if the jury have a reasonable doubt as to whether the defendant acted under compulsion of her husband they should acquit her".

The Commonwealth contends that the presumption is based upon a theory of the subservience of a wife to her husband that is no longer recognized in these days of woman's emancipation and independence and that it should no longer be recognized.

The rule, traceable at least to the Fourteenth Century, did in fact arise from reasons that no longer exist. Legal scholars seem to agree that as more men became literate and entitled to the benefit of clergy, the anomalous situation arose that when husband and wife engaged in a criminal act, the husband was beyond prosecution, while the wife was subject to the severe penalties of those days, including death for most crimes: 45 Harvard Law Review 1012. The presumption that a wife was acting under the coercion of her husband when acting in his presence was a device to relieve her from this prejudicial situation. This origin of the rule explains why the crimes of treason and

murder, which were without benefit of clergy, were also excluded from the operation of the presumption. Robbery is in a twilight zone and crimes, such as keeping a bawdy house, which were peculiarly those committed by women, are a later exception. Another apparent exception is where the punishment is by fine only.

As we recognize from other safeguards in criminal law that were imposed when many crimes were punishable by death, but which still continue despite the amelioration of penalties in modern times, so a rule of law does not die out simply because the reason for its promulgation has passed.

There can be no doubt that the presumption of coercion has survived the passing of severe penalties and the cloak of benefit of clergy, for it has been asserted right down to our own day: McClure v. Douthitt, 6 Pa. 414; Commonwealth v. Hand, 59 Pa. Superior Ct. 286; Commonwealth v. Balles, 57 D. & C. 581.

Our limited research has not revealed when this presumption became a rebuttable one, but here again, while its application in particular instances would not so indicate (see Commonwealth v. Long, 7 Justices' Law Reporter 115), it is now clear that the presumption may be rebutted: Commonwealth v. Saab, 75 Pa. Superior Ct. 386, 388; Commonwealth v. Esper, 75 Pa. Superior Ct. 388, 390; Commonwealth v. Hand, supra, 21 Cyc. 1355.

We recognize that many jurisdictions have abandoned the rule, some by legislation, others by statutory construction, but we are not impressed by the reasons given. (See 4 A. L. R. 266 and a recent English report that a museum janitor's wife was held for receiving stolen goods into her and her husband's home.) Granting that the original actual reasons for

the rule are no longer valid, the rule would not have survived so long had it not appealed to some new reason, which we are convinced is human experience of the wife's tendency to follow her husband's bidding.

The rule is not founded on a wife's coverture or on public policy to promote domestic tranquillity. If it were, the wife would be absolved from all criminal acts in concert with her husband, whether in or out of his presence or with or without actual coercion. That is not the law. See 4 A. L. R. 269, 274; Commonwealth v. Saab, supra. The rule is based upon human experience and therefore its continuing validity is not affected by any change in a wife's property or personal rights.

While a married woman may not be her husband's chattel and while instances could possibly be found where a wife may dominate her husband and where others may be bold enough to stand up to their husbands, we have not yet reached the point where we decry the nobility, dignity or grace of a wife's deference to her husband's desires. Chivalry alone would call for this explanation of a married woman's participation in her husband's crime.

The rule of a rebuttable presumption is flexible enough to accommodate itself to woman's rising independence and to a realistic inquiry whether or not coercion actually exists in any particular case and in a more enlightened age. The quantum of evidence required to rebut the presumption may vary with the spirit of the times but the rule can remain the same indefinitely.

We have found no reason to exclude the crime of drunken driving from the operation of the rule, although there is a strong public policy that would dictate its inapplicability to that situation.

While there is a provision for punishment for permitting an intoxicated person to drive one's car, all

sorts of complications could arise which might relieve a husband from responsibility while his presence in the car would absolve his wife. A carousing couple could thus become a public menace with little chance of punishment for either.

Nevertheless, if a wife is actually coerced by her husband, the rule would apply. We believe that the public is protected by the inconclusiveness of the presumption, so long as the rule is not interpreted blindly and arbitrarily against the Commonwealth as it has been in several instances in the past.

We instructed the jury exactly as defendant requested us to charge and, therefore, she can have no complaint on that score. In one case (Commonwealth v. Hand, 59 Pa. Superior Ct. 286, 288) it was held that refusal so to charge was harmless error, where the testimony justified a finding that the wife was not in fact coerced, despite the husband's presence in the house, while she supervised liquor sales.

In Commonwealth v. Saab, supra, the Superior Court held that the trial court would have erred in giving binding instructions and that the question of coercion was for the jury.

But defendant contends that there is *no* evidence to rebut the presumption and that, therefore, her demurrer should have been sustained and her motion to be discharged should have prevailed.

We note these circumstances which the jury might have used to find that the presumption of coercion had been rebutted:

First, accepting the testimony of defendant and her husband, the words by which defendant assumed control of the car can be interpreted as being precatory and not mandatory;

Second, the husband's posture in the car was one of complete relaxation if not of temporary semiconsciousness;

Third, the defendant had not only the keys, but the cards to the car as well, some slight indication of dominion;

Fourth, the car traveled for almost three miles along the busiest streets in Allentown and must have passed at least a half dozen policemen and crowds on the sidewalk. With the best of luck, it must have been stopped at at least six traffic lights and at one stop sign at which defendant could have escaped from any coercion.

In our opinion these were sufficient to carry the case to the jury. Under the instructions requested by defense counsel, it was the province of the jury to determine whether the presumption was rebutted and defendant proved guilty beyond a reasonable doubt. Their verdict of guilty answered that question.

Now, July 12, 1954, defendant's motions in arrest of judgment and for a new trial are denied and it is ordered that defendant appear in court on July 26, 1954 at 9:30 a.m. (Eastern Daylight Saving Time), for sentence.