## Commonwealth *v.* Donnelly, Appellant.

398

Argued March 9, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Marilyn J. Gelb*, for appellant.

*John H. Isom*, Assistant District Attorney, with him *Mark Sendrow* and *Steven H. Goldblatt*, Assistant District Attorneys, *Abraham J. Gafni*, Deputy District Attorney, *Richard A. Sprague*, First Assistant District Attorney, and *F. Emmett Fitzpatrick*, District Attorney, for Commonwealth, appellee.

OPINION BY PRICE, J., March 31, 1975:

Appellant was found guilty of two counts of receiving stolen goods[1] following a jury trial from June 25 to June 29, 1973. He was sentenced on each count to concurrent terms of one to five years imprisonment. In this appeal, appellant raises many contentions of error, all of which we find without merit. We, therefore, affirm the judgment of sentence.

The facts, as found by the lower court, may be summarized as follows: Two witnesses testified to two separate burglaries that occurred in Philadelphia County in early 1971. Salvatore Mergliano testified that on January 25, 1971, his residence was burglarized and a metal box containing a number of United States Series E bonds (22 bonds of $500 denomination and one $25 bond), among other items, were taken. Jules Jazdowskis testified that his residence was burglarized on February 6, 1971, and a number of United States Series E bonds (79 bonds of $50 denomination and three $100 bonds) and jewelry were taken.

Donald Eagle testified that the appellant, William Donnelly, had contacted him by telephone in Florida in June, 1971, and offered to sell $40,000 worth of stolen United States bonds. Mr. Eagle, an informant who possessed an extensive criminal record, had known the appellant since March, 1969. After informing the appellant that he would think over the proposed transaction, Mr. Eagle immediately contacted federal authorities in Florida and reported the incident. In cooperation with federal authorities, Mr. Eagle subsequently arranged to meet the appellant in Philadelphia to arrange the transfer and sale of the stolen bonds. The first meeting was to take place on August 23, 1971.

Prior to this meeting, Mr. Eagle had arranged with federal authorities in Philadelphia to have an in-

---

1. Act of June 24, 1939, P.L. 872, §817; May 21, 1943, P.L. 306, §1 (18 P.S. §4817).

terconnecting hotel room with Secret Service agents on the twelfth floor in the Penn Center Inn. The agents placed a hidden radio transmitter in Mr. Eagle's room in an air conditioner, and through this device the agents were able to listen to and record the conversation that took place on August 23. This device was placed in the room with Mr. Eagle's full knowledge and consent.

Mr. Eagle further testified that at this meeting appellant brought to Mr. Eagle a sample of the stolen bonds for inspection pursuant to a prior agreement. The stolen bonds were discussed by the parties for a period of one to one-and-one-half hours. During the meeting, Mr. Eagle spelled out the names on the bonds, and they included the names of Mergliano and Jazdowskis. Following this discussion, Mr. Eagle arranged a meeting for the next day for the purpose of exchanging the items and money.

Appellant returned to Mr. Eagle's room in the Penn Center Inn on August 24, 1971, to negotiate the exchange. At this one hour meeting, Mr. Eagle paid $2,500 to the appellant for 135 bonds. Appellant also agreed to send nine $500 bonds to Mr. Eagle for an additional payment of $1,000.

A Secret Service agent testified that during the meeting on August 24, 1971, the listening device implanted in Mr. Eagle's room did not function. The agent then testified that he had listened to the conversation between Mr. Eagle and appellant through the connecting but closed door. At the conclusion of the meeting, agents were dispatched to arrest appellant. The agents found two men at the twelfth floor elevator, and brought them both back to Mr. Eagle, who immediately identified appellant as the individual who had taken part in the transactions. The other man was released. Appellant was then arrested and searched by the federal agents.

In appellant's pocket the agents found nine $500 bonds in the name of Salvatore Mergliano and $2,500 in marked currency previously given to Mr. Eagle by the federal agents for the transaction. In Mr. Eagle's room the agents also found 135 bonds, which were later determined to be bonds stolen from Jazdowskis, Mergliano and others. These 135 bonds were identified by Mr. Eagle as those given to him by the appellant during the transaction. Fingerprint analysis found appellant's fingerprints on an envelope containing the stolen bonds left in Mr. Eagle's room.

Appellant was indicted on two counts each of burglary, larceny and receiving stolen goods. A hearing was held on November 28, 1972, to consider appellant's motion to suppress evidence, and the motion was subsequently denied. At trial, appellant did not testify or present evidence in his defense. Subsequently, a jury returned a verdict of guilty on both indictments of receiving stolen goods. Timely motions for a new trial and in arrest of judgment were filed and denied. This appeal follows the judgment of sentence.[2]

## I.

Initially, appellant contends that his arrest, the search of his person, and the search of the motel room in which the sale of the stolen United States bonds took place, were all illegal and the fruits of those actions should have been suppressed. In support of these contentions, appellant argues that the Commonwealth failed to sustain the burden of proving the legality of the arrest.

It is well established that a police officer is authorized to arrest without a warrant where he has probable cause to believe that a felony has been com-

---

2. Jurisdiction granted by Act of July 31, 1970, P.L. 673, No. 223, art. III, §302 (17 P.S. §211.302).

mitted and that the person to be arrested is the felon. *Draper v. United States,* 358 U.S. 307 (1959) ; *United States ex rel. Gockley v. Myers,* 314 F. Supp. 839 (E. D. Pa. 1970) ; *Commonwealth v. Jackson,* 450 Pa. 113, 299 A.2d 213 (1973) ; *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A.2d 304 (1963) ; *Commonwealth v. Vassiljev,* 218 Pa. Superior Ct. 215, 275 A.2d 852 (1971).

Probable cause to justify a warrantless arrest exists if the facts and circumstances known to the officer at the time of the arrest would warrant a prudent man in believing that an offense has been committed, and the suspect was the perpetrator of that offense. *Terry v. Ohio,* 392 U.S. 1 (1968) ; *McCray v. Illinois,* 386 U.S. 300 (1967) ; *Commonwealth v. Smith, supra; Commonwealth v. DeFleminque,* 450 Pa. 163, 299 A.2d 246 (1973) ; *Commonwealth v. Brown,* 230 Pa. Superior Ct. 214, 326 A.2d 906 (1974). These facts and circumstances, however, are not those that a legal technician might desire when examining the situation in retrospect; but, rather, the practical considerations of everyday life upon which reasonable and prudent men rely. *Henry v. United States,* 361 U.S. 98 (1959) ; *Draper v. United States, supra; Commonwealth v. Negri,* 414 Pa. 21, 198 A.2d 595 (1964). In any event, probable cause means less evidence than that which justifies convictions. *Wong Sun v. United States,* 371 U.S. 471 (1963) ; *Commonwealth v. Anderson,* 224 Pa. Superior Ct. 19, 302 A.2d 504 (1973). See generally Annot., 28 L.Ed. 2d 978 (1971) (collecting cases defining probable cause) ; 4 *Wharton's Criminal Evidence* §721 (13th ed. C. Torcia 1973).

A review of the record indicates that the Commonwealth proved that the arresting agents had ample information to believe that probable cause existed and that a crime was being committed within their hearing. The agents were privy to the two meetings between Mr. Eagle and the appellant, during which the

bonds were examined, described orally, transferred and sold. The agents were also aware of the pre-existing information concerning the relationship between Mr. Eagle and the appellant.[3]

Appellant's contention that the search of appellant's person is invalid fails, because we have found that the preceding arrest was legal. Where the arrest of an individual is proper, a search for contraband incident to the arrest is constitutionally valid. *Draper v. United States, supra; United States v. Rabinowitz*, 339 U.S. 56 (1950) ; *Commonwealth v. Bosurgi, supra.* See also *United States v. Robinson*, 414 U.S. 218 (1973) and *Gustafson v. Florida*, 414 U.S. 260 (1973), wherein it was held that the full search of the person of the

---

3. Appellant also argues that the record of the suppression hearing does not include testimony by the arresting government agents concerning the crime for which appellant was arrested, resulting in the failure by the Commonwealth to show that the arrest and search by the federal authorities were legal. In addition, appellant contends that because the federal authorities arrested appellant for a crime other than those charged in the state court, the evidence gathered by the federal authorities may not be used in a state court. This argument, however, ignores the fact that the standard for probable cause is not the actual mental state of the arresting officer, but rather whether the officer had sufficient reliable information to warrant a man of reasonable caution in the belief that an offense has been or is being committed. *Commonwealth v. Negri*, 414 Pa. 21, 198 A.2d 595 (1964). Thus, the standard is an objective one and is not dependent upon the subjective intent of the specific officer. *Draper v. United States*, 358 U.S. 307 (1959). Where probable cause exists, the governmental intrusion is justifiable regardless of whether the federal officer can enunciate the specific elements of the suspected state crime. Further, at trial the arresting agent testified that he investigated the case with a view to charging appellant in federal court with conspiracy to forge and utter United States Savings Bonds. See 18 U.S.C.A. §472 (1966). The appellant was not indicted for this federal crime because mere possession of stolen federal bonds is not a federal offense. Appellant's Brief at Appendix A.

suspect made incident to a lawful custodial arrest did not violate the Fourth and Fourteenth Amendments.[4]

Appellant's additional contention, that the search of the motel room where the negotiations and sale of the bonds took place was illegal, is without merit for two reasons. First, by his actions, appellant clearly had intended to relinquish all rights and interests in the bonds. As a result of the sale, appellant no longer held possessory interest in the seized bonds, thereby extinguishing the right to object to the seizure of the bonds. See *Alderman v. United States*, 394 U.S. 165 (1969) ; *Jones v. United States*, 362 U.S. 257 (1960). See also *Brown v. United States*, 411 U.S. 223 (1973) (petitioners who fail to establish any possessory interest in either the challenged evidence or in the premises in which the evidence was found were without standing to attack the illegality of the search).

Secondly, Mr. Eagle consented to the search of the motel room. His possession of the room was evidenced by the registration of the room in his name; the actual expense of the room was borne by the federal authorities. Therefore, in light of Mr. Eagle's consent to the search, appellant has no legal basis upon which to complain about the search. In a case illustrative of this point, *Commonwealth v. Smith*, 201 Pa. Superior Ct. 511, 193 A.2d 778 (1963), the police, acting on information supplied by a reliable informant, stopped the defendant on the street and searched him for marijuana. Smith, after being taken into custody, stated that he had nothing to hide and invited the police to search his apartment. The police accepted Smith's invitation and accompanied him to his apartment. At the apartment, they identified themselves to defendant, Bass,

---

4. Because we find that the arrest and the search incident to the arrest were legal, the "silver platter doctrine," *Elkins v. United States*, 364 U.S. 206 (1960), does not apply.

an occupant, who was incoherent. A search of the apartment revealed additional quantities of marijuana. Bass challenged the search of Smith's apartment as a violation of his constitutional rights. This court, in denying Bass' request, noted: "Here the search of Smith's apartment was made at his invitation, with his consent, and in his presence. Since immunity from unreasonable searches is personal, a defendant cannot object to the search of another's premises or property if the latter consents to the search even though evidence found is used in the prosecution of the defendant." 201 Pa. Superior Ct. at 516, 193 A.2d at 780. *Cf. Commonwealth v. Hardy,* 423 Pa. 208, 223 A.2d 719 (1966) (owner of premises may consent to the search of his premises, and if evidence is seized belonging to an occupant thereof, the occupant has no cause to complain) ; *Commonwealth v. McKenna,* 202 Pa. Superior Ct. 360, 195 A.2d 817 (1963).

In any event: "[i]n determining whether evidence obtained from a search consented to by one person can be used against another, the question is whether the person granting the consent had sufficient control over the premises to grant consent in his own right. The question is not whether the consenting person had the power to waive another's constitutional rights." *Commonwealth v. Rhoads,* 225 Pa. Superior Ct. 208, 212, 310 A.2d 406, 409 (1973). See also *Commonwealth ex rel. Cabey v. Rundle,* 432 Pa. 466, 248 A.2d 197 (1968) (wife consented to search of garage; evidence used in prosecution of husband).

In the instant appeal, the evidence shows that Mr. Eagle clearly had full control over the premises and had the power to consent to the search of the motel room. The resultant search did not violate appellant's rights.[5]

_____
5. Appellant also argues that he is faced with the Hobson's choice of either admitting the possession of contraband to establish standing to attack the validity of his search or forego the constitu-

## II.

Appellant also contends that the recordation of the conversation on August 23, 1971, in which appellant and Mr. Eagle discussed the transfer and sale of the stolen bonds, violated the Omnibus Crime Control and Safe Streets Act of 1968[6] and the Fourth Amendment of the United States Constitution. As a result, appellant argues that the evidence later gathered because of this conversation should have been suppressed.

The Omnibus Crime Control and Safe Streets Act specifically exempts conversations from the warrant requirement if one party consents to the interception. The pertinent section provides in part: "(2) .... (c) It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception." 18 U.S.C.A. §2511 (2) (c) (1970).

Since Mr. Eagle was a party to the personal conversation and gave his consent to its interception, the provisions proscribing warrantless interceptions of oral communications have no application.[7] See e.g., *Bakes v.*

___

tional claim. *Jones v. United States*, 362 U.S. 257 (1960). However, in this appeal, appellant has relinquished through voluntary sale his right, interest and possession in the contraband. In addition, a prosecutor may not use at the defendant's trial any testimony given by the defendant at a pre-trial hearing to establish standing to move to suppress evidence. *Simmons v. United States*, 390 U.S. 377 (1968). See also *Brown v. United States*, 411 U.S. 223 (1973).

6. 18 U.S.C.A. §2510 *et seq., as amended* (1970).

7. Appellant's subsidiary argument, that crimes for which appellant was arrested and charged in the state court were not enumerated in 18 U.S.C.A. §2516 (1970), and, therefore, are not a proper focus of electronic eavesdropping, of course fails because we find this electronic eavesdropping outside the purview of the provisions of 18 U.S.C.A. §2510 et seq., *as amended* (1970).

*United States,* 350 F. Supp. 547 (N.D. Ill. 1972) ; *United States v. Riccobene,* 451 F.2d 586 (3d Cir. 1971); *People v. Patrick,* 46 Mich. App. 678, 208 N.W. 2d 604 (1973).

The analogous statutory provisions in Pennsylvania concerning wiretapping, Act of July 16, 1957, P.L. 956, No. 411, §1 (18 P.S. §3742), repealed by Act of Dec. 6, 1972, P.L. 1482, No. 334, §1, *as amended* (18 Pa. C.S. §5702), prohibits the interception of a communication by telephone or telegraph, without the consent or approval of both parties to the communication. *Commonwealth v. McCoy,* 442 Pa. 234, 275 A.2d 28 (1971). These provisions apply only to wiretapping, and not to instances of electronic eavesdropping. *Commonwealth v. Goldberg,* 208 Pa. Superior Ct. 513, 224 A.2d 91 (1966). Therefore, in light of a lack of Pennsylvania statutory proscriptions, this issue is governed by the applicable portions of federal law. *Cf. U.S. ex rel. Mancini v. Rundle,* 337 F.2d 268 (3d Cir. 1964) (state standard must at least measure up to or include federal constitutional standards).

Appellant's further argument, that there was a violation of his personal privacy by the surreptitious recording of his conversation without the use of a warrant and by the use of the intercepted communication against the non-consenting party, has been found in the past not to be in violation of the Fourth Amendment. The starting point in determining this result is the United States Supreme Court opinion in *Lopez v. United States,* 373 U.S. 427 (1963). In *Lopez,* an internal revenue agent, in an attempt to obtain evidence of an attempted bribe, wire-recorded his conversation with Lopez by a device carried on the agent's person. In affirming the lower court, the United States Supreme Court held that the admission of transcriptions of conversations, which had been electronically seized without a warrant, were constitutionally admissible to

corroborate the direct testimony of the informer, who had been a party to the conversation and who had consented to the interception. This holding was bottomed on the rationale: "The Court has in the past sustained instances of 'electronic eavesdropping' against constitutional challenge, when devices have been used to enable government agents to overhear conversations which would have been beyond the reach of the human ear. See, e.g., *Olmstead v. United States,* 277 U.S. 438; *Goldman v. United States,* 316 U.S. 129. It has been insisted only that the electronic device not be planted by an unlawful physical invasion of a constitutionally protected area. *Silverman v. United States,* [365 U.S. 505.] The validity of these decisions is not in question here. Indeed this case involves no 'eavesdropping' whatever in any proper sense of that term. *The Government did not use an electronic device to listen in on conversations it could not otherwise have heard. Instead, the device was used only to obtain the most reliable evidence possible of a conversation in which the Government's own agent was a participant and which that agent was fully entitled to disclose."* [Emphasis added] 373 U.S. at 438-39. *Cf. Hoffa v. United States,* 385 U.S. 293 (1966) (government deceptively placing a secret informer in defendant's hotel room during defendant's criminal trial does not violate the Fourth Amendment) ; *Lewis v. United States,* 385 U.S. 206 (1966) (no warrant necessary when government sends an agent to make a narcotics purchase from defendant) ; *Commonwealth v. Brown,* 437 Pa. 1, 261 A.2d 879 (1970) (Fourth Amendment does not protect a wrongdoer's misplaced belief that a person in whom he voluntarily confides his wrongdoing or evidence will not reveal it.)

In a Memorandum Opinion written by Mr. Justice HARLAN, *Rosoto v. Warden, California State Prison,* 83 S. Ct. 1788 (1963), it was stated that no substantial

federal question was presented by the admission into evidence in a state murder prosecution of electronic recordings of a conversation between an accused and his half-brother who was used by the police as a ruse. The microphone and transmission pack had been placed in the half-brother's motel room, and the receiver in an adjoining room occupied by police officers.

These cases were interpreted by the lower federal court as permitting the employment of electronic equipment on the premises or vehicle of a person cooperating with the authorities, with the consent and knowledge of such person, in order to surreptitiously record or transmit oral communications with another party. See, e.g., *United States v. Bryant*, 439 F.2d 642 (D.C. Cir. 1971) (device installed in motel room) ; *United States v. Reiff*, 435 F.2d 257 (7th Cir. 1970), *cert. denied*, 401 U. S. 938 (1971) (device installed in place of business) ; *United States v. Edwards*, 366 F.2d 853 (2d Cir. 1966), *cert. denied*, 386 U. S. 908 (1967) (device installed in hotel room) ; *United States v. Dorfman*, 335 F. Supp. 675 (S.D. N.Y. 1971) (device installed on premises). See also *United States v. Birnbaum*, 337 F.2d 490 (2d Cir. 1964) (device installed in hotel room). Contra *United States v. White*, 405 F.2d 838 (7th Cir. 1969) (cases cited therein).

In the most recent United States Supreme Court case in this area, *United States v. White*, 401 U.S. 745 (1971), the Court held that a government agent, who had a radio transmitter on his person while engaging the defendant in conversation in defendant's home and automobile, need not secure a warrant when wiring an informer for sound in order to transmit conversations with a suspect under surveillance. The plurality opinion written by Mr. Justice WHITE, while relying on *Hoffa v. United States, supra,* and *On Lee v. United States*, 343 U.S. 747 (1952), noted: "Concededly a police agent who conceals his police connections may

write down for official use his conversations with a defendant and testify concerning them, without a warrant authorizing his encounters with the defendant and without otherwise violating the latter's Fourth Amendment rights. *Hoffa v. United States*, 385 U.S. at 300-303. For constitutional purposes, no different result is required if the agent instead of immediately reporting and transcribing his conversations with defendant, either (1) simultaneously records them with electronic equipment which he is carrying on his person, *Lopez v. United States, supra;* (2) or carries radio equipment which simultaneously transmits the conversations either to recording equipment located elsewhere or to other agents monitoring the transmitting frequency. *On Lee v. United States, supra.* If the conduct and revelations of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversations made by the agent or by others from transmissions received from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks." 401 U. S. at 751. See Comment, 47 *Notre Dame Lawyer* 172 (1971).

Since *White,* the lower federal courts have uniformly held that it is not a violation of a defendant's Fourth Amendment right if an informer relays the contents of his conversation with the defendant to government agents or allows agents to tape record or otherwise monitor the conversation. See, e.g., *United States v. Fanning,* 477 F.2d 45 (5th Cir.), *cert. denied,* 414 U.S. 1006 (1973) (device installed in business office) ; *United States v. Bishton,* 463 F.2d 887 (D.C. Cir. 1972) (device installed on agent's person) ; *United States v. Warren,* 453 F.2d 738 (2d Cir.), *cert. denied,* 406 U.S. 944 (1972) (device installed on telephone). See also Annot., 17 L. Ed. 2d 1008 (1967) (collecting cases concerning the Fourth Amendment and the use of recording or eaves-

dropping devices to obtain evidence); American Bar Association Project on Standards for Criminal Justice, *Standards Relating to Electronic Surveillance* §4.1 (Tent. Draft 1968) ("The use of electronic surveillance techniques by law enforcement officers for the overhearing or recording of a wire or oral communications with the consent of one of the parties should be permitted").

We, therefore, find that the introduction of evidence of the recorded conversations between appellant and Eagle does not violate any federal or Pennsylvania statutory proscriptions or violate appellant's Fourth Amendment rights.

### III.

The appellant alleges that the trial judge erred in charging the jury that possession of recently stolen goods gives rise to an inference of guilt of burglary, larceny and receiving stolen goods. He contends that, despite the fact appellant was acquitted of burglary and larceny, the charge as a whole confused the jury as to the proper inference to be drawn from possession of stolen goods. After examination of the trial judge's charge, we find this contention to be without merit.

The trial judge, in his charge, stated: "Under the law, the possession of recently stolen property raises an inference that the possessor was the thief, but it does not raise a legal presumption of guilt, and no burden shifts to the defendant to account for his possession at his peril. The burden of proof always remains on the Commonwealth, and it is for you, the jury alone, to say whether or not the guilt of the defendant here is a reasonable inference of fact. Fairly deducible from his possession of the property in the light of all the evidence as to how he came into possession. You may, if you conclude, that the defendant was in possession of recently stolen property, consider this fact as some inference of guilt.

"The Commonwealth is not denied the weight of the inference, merely because only a part of the allegedly stolen

property was found in the possession of the defendant.

"If several articles are stolen, a conviction may be had as to any of the articles, if shown to have been feloniously taken by the defendant. In consequence, if you believe that the defendant had possession of one or more of the recently stolen articles, and if there is no satisfactory reason appearing why he had such possession, then you may consider such possession as some evidence that the possessor was the thief.

"You will note, however, that the possession must be recent. The law does not declare what this period is. And the period depends upon the character of the property and the circumstances of the whole case. Yours is the task of determining whether the possession was recent, subsequent to the taking, as to give rise to the inference of guilt which we have just discussed. This would apply to the larceny and to the burglary, and it would also apply to the charge of receiving stolen property. *And in that case, the inference would be that the possessor had feloniously or illegally received the property, and not in that case that he had taken it, but only that he had feloniously or illegally received it, and that he knew that or should have known that it was taken.*

"Ladies and gentlemen of the jury, the Supreme Court of Pennsylvania has established the following criteria or standards in determining whether or not the inference is a reasonable one. One: The lapse of time and the discovery of the property. Two: The type and kind of property. Three: The amount and volume of the property. Four: The ease with which it may be assimilated into trade channels." [Emphasis added] [NT 396-98]

We find that the trial judge's charge concerning burglary and larceny, crimes for which the appellant was acquitted, did not confuse the jury as to the proper inference to be drawn from the recent possession of stolen goods and the crime of receiving stolen goods. The necessary inference in this case is that the appellant re-

ceived the stolen goods knowingly.[8] The knowledge that the goods were stolen does not have to be actual knowledge if the circumstances are such as would lead the appellant to have reasonable cause to know the goods were stolen. *Commonwealth v. Henderson*, 451 Pa. 452, 304 A.2d 154 (1973) ; *Commonwealth v. Shaffer*, 447 Pa. 91, 288 A.2d 727 (1972). It is also necessary to show more than mere possession to establish the inference that appellant knew or had reason to know that the property he possessed was stolen. All circumstances surrounding the possession must be weighed in order to surmise if there is sufficient evidence to support the finding of guilt. *Commonwealth v. Henderson, supra; Commonwealth v. Shaffer, supra; Commonwealth v. Owens*, 441 Pa. 318, 271 A.2d 230 (1970). But see *Commonwealth v. Allen*, 227 Pa. Superior Ct. 157, 324 A.2d 437 (1974).

The trial judge properly charged the jury to consider the inference in light of all the evidence, and specifically enumerated the series of factors which the jury should consider in determining whether or not to apply the inference. The trial judge's charge as to the crime of receiving stolen goods fairly and reasonably permitted the jury to draw the proper inference and find appellant guilty of receiving stolen goods.

## IV.

Appellant raises two allegations of error concerning the testimony of certain witnesses during the trial. First, appellant argues that the lower court erred in refusing to instruct the jury that, because Mr. Eagle was an informer, his testimony must be examined closely. Appel-

---

8. To prove the crime of receiving stolen goods it is also necessary to show that the goods were stolen and that defendant received the goods. See Act of June 24, 1939, P.L. 872, §817; Act of May 21, 1943, P.L. 306, §1 (18 P.S. §4817). The evidence presented by the Commonwealth clearly showed that the bonds in question had been stolen and that the appellant had received the bonds.

lant further asserts that the factual situation in this case necessitates careful instructions calculated to call attention to the character of the testimony of the informer.

The question of the credibility of Mr. Eagle's testimony is a matter for the jury. *Cf. Commonwealth v. Balles,* 160 Pa. Superior Ct. 148, 50 A.2d 729 (1947). The jury is guided by cautionary instructions because of the serious questions of credibility inherent in those cases where the prosecution employs the use of an informer's testimony. See *On Lee v. United States,* 343 U.S. 747 (1952). Specifically, special cautionary instructions have been used where the incriminating testimony is uncorroborated or unsubstantiated, or in those situations where the informer provides evidence for pay or for immunity from punishment or for personal advantage or vindication. See, e.g., *United States v. Holmes,* 453 F.2d 950 (10th Cir.), *cert. denied,* 406 U.S. 908 (1972) (corroborated co-conspirator's testimony) ; *Lujan v. United States,* 348 F.2d 156 (10th Cir.), *cert. denied,* 382 U.S. 889 (1965) (collaborated testimony of paid informer) ; *Todd v. United States,* 345 F.2d 299 (10th Cir. 1965) (collaborated informer's testimony). See also 23A C.J.S. *Criminal Law* §1175 (1961).

In this appeal, we find no error in the failure of the lower court to give cautionary instructions concerning the character of Mr. Eagle's testimony. The record indicates that Mr. Eagle was not paid by government authorities to inform upon his dealings with the appellant. The record also fails to reveal evidence indicating that Mr. Eagle harbored vindictive motives or was requesting from the government officials immunity from punishment. Rather, the record indicates that Mr. Eagle, a parolee, was attempting to avoid a violation and possible subsequent revocation of his parole by reporting his contacts with the appellant. In addition, Mr. Eagle's testimony was firmly corroborated by both the physical evidence of the government agent and the tapes that were

recorded and played at trial. Thus, the lower court properly reasoned that the factual setting in this case did not require special cautionary instructions concerning Mr. Eagle's informant status. The court did, however, recognize that Mr. Eagle's prior felony convictions could bear on his credibility as a witness, and proceeded to properly instruct the jury as to the care required in weighing the credibility of a convicted felon.[9]

The second alleged error raised by appellant questions the trial judge's refusal to permit appellant to cross-examine the government agent concerning the circumstances surrounding the arrest. On cross-examination, appellant asked the agent: "Q [Appellant's counsel] ... For what crime or crimes did you make this arrest? A [Agent Ryan] I arrested Mr. Donnelly for conspiracy to forge and utter United States Savings Bonds. Q And with whom was he conspiring? MR. CANUSO [Assistant District Attorney] Objection, Your Honor. THE COURT: Objection sustained." Following a side-bar discussion, all subsequent questions concerning the arrest of appellant by federal authorities were refused by the trial judge on the grounds that the proposed questions related to matters of only tangential relevance to the issues being litigated.

The scope of cross-examination is largely within the sound discretion of the trial judge, and even if a ruling is erroneous, the error is not grounds for reversal unless it results in apparent injury. *Commonwealth v. Marine*, 213 Pa. Superior Ct. 88, 245 A.2d 868 (1968) ; *Common-*

---

9. The lower court's instructions as to Mr. Eagle's testimony were as follows: "With respect to Donald Eagle's testimony, you heard him testify that he has been convicted of a number of felonies. You can, and may consider his testimony in your determination of whether or not he is a credible and believable witness. You may determine if his testimony is such as falsely to implicate the defendant. The criminal record itself does not make him an unbelievable witness. In evaluating his credibility, you may take these factors into consideration." [NT 404]

*wealth v. Dunn*, 212 Pa. Superior Ct. 384, 243 A.2d 476 (1968) ; *Commonwealth v. Cano*, 182 Pa. Superior Ct. 524, 128 A.2d 358 (1956). We find no abuse of discretion by the trial judge in his refusal to permit further cross-examination of the government agent concerning appellant's arrest. Despite the fact that the questions posed by appellant may have had some minimal relevance in testing the credibility of the government agent, the trial judge properly decided that the probative value of those questions was so limited as to not warrant the expenditure of time.

V.

Appellant contends that it was improper for the judge to impose separate sentences on the two convictions for receiving stolen goods because the Commonwealth merely proved one possession and thus only one crime. However, the record indicates that two different sets (each set of bonds were stolen from different persons, on different dates at different places) of stolen bonds were found in the possession of appellant when he was arrested and accordingly he could be indicted separately for each set. See *Commonwealth v. Cohan*, 177 Pa. Superior Ct. 532, 111 A.2d 182 (1955). Moreover, appellant made no objection at the time of the rendering of the verdict as to this claim, thus precluding our consideration of this allegation of error. *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974); *Commonwealth v. Bronaugh*, 459 Pa. 634, 331 A. 2d 171 (1975).

Finally, appellant argues that his sentence of imprisonment for receiving stolen goods is unconstitutional on the grounds that the statutory sentencing provision for men and women authorize different treatment, resulting in a denial of equal protection of the laws under the Fourteenth Amendment. This precise issue was decided in *Commonwealth v. Butler*, 458 Pa. 289, 331 A.2d 678 (1974), where that portion of the sentencing

act directing that no minimum sentence be imposed on women was declared unconstitutional, and left unaffected the sentencing provisions for males. Therefore, appellant's sentence is not affected by the scope of the *Butler* decision.

Judgment of sentence affirmed.

JACOBS and HOFFMAN, JJ., concur in the result.